## ROCKEFELLER *v.* UNITED STATES.

## NEW YORK TRUST COMPANY ET AL., EXECUTORS OF HARKNESS, *v.* EDWARDS, COLLECTOR OF UNITED STATES INTERNAL REVENUE FOR THE SECOND DISTRICT OF NEW YORK.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

Nos. 535, 536. Argued October 11, 12, 1921.—Decided November 21, 1921.

1. Where the stockholders of a corporation, which is engaged in producing, buying and selling crude petroleum and in transporting it through its pipe lines, form a new corporation to which the pipe line property is conveyed by the old corporation and in consideration therefor and as part of the transaction all the capital stock of the new corporation, of par value equal to the valuation of the property so conveyed, is distributed among such stockholders *pro rata,* either by being issued to them directly, or by being first

issued to the old corporation and then so distributed, and the old company possesses such a surplus that the transaction leaves its capital unimpaired and requires no reduction of its outstanding issues, the shares so received by the stockholders are a dividend within the meaning of the Income Tax Act of October 3, 1913, c. 16, 38 Stat. 166, and income within the meaning of the Sixteenth Amendment. P. 182. *United States* v. *Phellis, ante,* 156.

2. Such a distribution of shares, whatever its effect upon the aggregate interests of the stockholders, constitutes, in the case of each individual, a gain in the form of actual, exchangeable assets transferred to him from the old company for his separate use, in partial realization of his former indivisible and contingent interests in the corporate surplus—in substance and effect a dividend of profits by the corporation, and individual income of the shareholder. P. 183.

274 Fed. 952, affirmed.

ERROR to judgments of the District Court sustaining income tax assessments under the Income Tax Law of October 3, 1913, and the Sixteenth Amendment. In No. 535, the action was by the United States, to collect the tax, against the plaintiff in error Rockefeller. In No. 536, the plaintiffs in error, having paid the tax under protest, sued the collector to recover the amount with interest.

*Mr. George Welwood Murray,* with whom *Mr. Harrison Tweed* was on the briefs, for plaintiffs in error.

The fact is that the transaction was purely a capital transaction, the substance of which was merely an alteration in the form of the stockholder's capital interest—an exchange of one form of capital interest for another—from which no income was derived.

The rules and principles established by this court and applied by it in the *Towne* and *Macomber Cases* prohibit a resort to metaphysics to establish the receipt of income in connection with a transaction which from the point of view of the corporation was a necessary separation of its

two lines of business, and from the point of view of the stockholder was a mere change in the form of his capital investment.

Regard must be had to the substance and entirety of the transaction.

The meaning to be attached to the word "income" is not that ascribed to it by dictionarians or economists, but is, on the contrary, the meaning in which it is commonly used and understood.

There are three essential elements of income: (a) gain; (b) separated from the capital, and (c) realized by the recipient.

In the case of a stockholder, income is not realized unless and until something has been freed from corporate control and business risks and transferred to the absolute ownership of the stockholder.

The *Towne Case* illustrates the application of the foregoing rules and principles to facts very similar to the facts in the case at bar and is conclusive that the stock of the pipe line companies did not constitute income within the meaning of the Income Tax Law of 1913.

The opinion of the court in the *Macomber Case* is simply a more thorough analysis of the facts and principles which controlled the decision in the *Towne Case*, and an extension of that decision to cover the construction of the Sixteenth Amendment.

The *Macomber Case* is conclusive that the stock of the pipe line companies did not constitute income within the meaning of the Sixteenth Amendment.

Any dissent in the *Macomber Case* was based upon considerations which have no application in the case at bar.

The stock of the pipe line companies did not become a part of the assets of the oil companies.

There is a fundamental distinction between the distribution to stockholders of liquid treasury assets on the one hand, and, on the other hand, the proceeds of the disposi-

tion of business plant constituting an integral part of the enterprise.

No part of the cause of action of plaintiffs in error in No. 536 is barred by the provisions of §§ 3226 and 3227, Rev. Stats.

*Mr. Solicitor General Beck,* with whom *Mr. Carl A. Mapes, Mr. Newton K. Fox* and *Mr. Andrew J. Aldridge* were on the brief, for defendants in error.

If there be any difference in principle between the facts of these two cases and those in the *Phellis Case, ante* 156, the facts now under consideration by the court are even stronger for the Government than in the *Phellis Case.* In that case the Du Pont Powder Company sold all its assets to the new corporation; and, had the former then proceeded to liquidate its affairs and dissolve as a corporation, a more serious question would have arisen, whether upon final liquidation that portion of the assets which were distributed—which undoubtedly represented accumulated earnings from operations—would or would not be taxable.

In the two present cases each oil company only sold a part of its assets (the part being far less than its surplus), and then vendor and vendee corporations continued actively in their respective businesses, the one as a producer, and the other as a transporter, of oil.

The argument that was made in the *Phellis Case,* that this court must regard the New Jersey and Delaware corporations as substantially one corporation on the theory of practical identity of function and purpose, can not be applied to the two instant cases, for the very purpose of the transactions in these cases was to destroy any possible identity by dividing between the two corporations two separate and distinct functions in the oil industry. Thenceforth, the oil companies had no further concern with transportation and the pipe line companies had no further connection with production.

MR. JUSTICE PITNEY delivered the opinion of the court.

These two cases were argued together, turn upon like facts, and may be disposed of in a single opinion. They involve the legality of certain income taxes assessed against the plaintiff in error in the one case, and against the testator of plaintiffs in error in the other, under the Income Tax provisions of the Act of October 3, 1913, c. 16, 38 Stat. 114, 166–167, by reason of certain distributions of corporate stocks received by the respective taxpayers under the following circumstances. In and prior to the year 1914, the Prairie Oil & Gas Company, a corporation of the State of Kansas, was engaged in producing, purchasing and selling crude petroleum, and transporting it through pipe lines owned by the company in the States of Kansas and Oklahoma, and elsewhere. At the same time the Ohio Oil Company, a corporation of the State of Ohio, was engaged in producing and manufacturing petroleum and mineral oil and transporting the same through pipe lines owned by it in the States of Ohio, Indiana, Illinois and Pennsylvania. In the month of June, 1914, it was judicially determined by this court (*The Pipe Line Cases,* 234 U. S. 548), that with respect to the transportation business these companies were common carriers in interstate commerce, subject to the Act to Regulate Commerce as amended by Act of June 29, 1906, c. 3591, 34 Stat. 584, and as such subject to the supervision of the Interstate Commerce Commission. By Act of September 26, 1914, c. 311, 38 Stat. 717, the remainder of their business became subject to the supervision of the Federal Trade Commission. In order to avoid a probable conflict of federal authority in case the combined business of production and transportation should continue to be carried on as theretofore, it was in each case, upon advice of counsel, determined that the pipe line property should be owned and operated by a separate corporation. In the

case of the Ohio company an added reason for segregation lay in the fact that by a section of the Ohio General Code its entire gross receipts, including those derived from business other than transportation, were subject to an annual assessment of 4% chargeable against the gross receipts of companies engaged in the transportation business. For these reasons, the stockholders of the Prairie Oil & Gas Company caused a corporation to be organized under the laws of the State of Kansas, by the name of the Prairie Pipe Line Company, to which all the pipe line property of the Prairie Oil & Gas Company was transferred in consideration of the issue and delivery of the entire capital stock of the new company, to be distributed *pro rata* to the stockholders of the Prairie Oil & Gas Company. And similarly, the stockholders of the Ohio Oil Company caused a corporation to be formed under the laws of that State, by the name of the Illinois Pipe Line Company, to which all the pipe line property of the Ohio Oil Company was transferred in consideration of the issue to it of the entire capital stock of the new company, which was to be distributed at once by the old company to its stockholders *pro rata*. These arrangements were carried out in like manner in both cases, except that in the case of the Kansas companies the stock of the pipe line company was issued directly to the stockholders of the oil company, whereas in the case of the Ohio companies the pipe line company issued its stock to the oil company, but in the same resolution by which the contract was made, an immediate distribution of the new stock among the oil company's stockholders was provided for, and in fact it was carried out. The aggregate valuation of the Prairie pipe lines was $27,000,000, that of the Ohio pipe lines $20,000,000, and the total capitalization of the respective pipe line companies equaled these amounts.

In each case, the oil company had a surplus in excess of the stated value of its pipe lines and of the par value of

the total stock of the corresponding pipe line company; so that the transfer of the pipe lines and the distribution of the stock received for them left the capital of the respective oil companies unimpaired and required no reduction in their outstanding issues.

Messrs. Rockefeller and Harkness respectively were holders of large amounts of the stock of both the Prairie and the Ohio oil companies and in the distributions each received an amount of stock in each of the pipe line companies proportionate to his holdings in the oil companies. This occurred in the year 1915. Neither Mr. Rockefeller nor Mr. Harkness nor the latter's executors sold any of the stock in the pipe line companies.

Income tax assessments for the year 1915 were imposed upon Messrs. Rockefeller and Harkness, based upon the value of the stocks thus received as dividends; and these assessments are in question in the present suits, both of which were brought in the District Court of the United States for the Southern District of New York: one by the United States against Mr. Rockefeller, the other by the executors of Mr. Harkness against the Collector. In each case the facts were specially pleaded so as to present the question whether the distribution of the stocks of the pipe line companies among the stockholders of the oil companies constituted, under the circumstances, dividends within the meaning of the Act of 1913, and income within the meaning of the Sixteenth Amendment. In each case a final judgment was rendered sustaining the assessment, and the judgments are brought here by direct writs of error under § 238, Judicial Code, because of the constitutional question.

Under the facts as recited we deem it to be too plain for dispute that in both cases the new pipe line company shares were in substance and effect distributed by the oil company to its stockholders; as much so in the case of the Kansas company where the new stock went directly

from the pipe line company to the stockholders of the oil company, as in the case of the Ohio company where the new stock went from the pipe line company to the oil company and by it was transferred to its stockholders. Looking to the substance of things the difference is unessential. In each case the consideration moved from the oil company in its corporate capacity, the new company's stock issued in exchange for it was distributed among the oil company's stockholders in their individual capacity, and was a substantial fruit of their ownership of stock in the oil company, in effect a dividend out of the accumulated surplus.

The facts are in all essentials indistinguishable from those presented in *United States v. Phellis,* decided this day, *ante,* 156. In these cases as in that, regarding the general effect of the entire transactions resulting from the combined action of the mass of stockholders, there was apparently little but a reorganization and financial readjustment of the affairs of the companies concerned, here a subdivision of companies, without immediate effect upon the personnel of the stockholders, or much difference in the aggregate corporate activities or properties. As in the *Phellis Case,* the adoption of the new arrangement did not of itself produce any increase of wealth to the stockholders, since whatever was gained by each in the value of his new pipe line stock was at the same moment withdrawn through a corresponding diminution of the value of his oil stock. Nevertheless the new stock represented assets of the oil companies standing in the place of the pipe line properties that before had constituted portions of their surplus assets, and it was capable of division among stockholders as the pipe line properties were not. The distribution, whatever its effect upon the aggregate interests of the mass of stockholders, constituted in the case of each individual a gain in the form of actual exchangeable assets transferred to him from the oil com-

pany for his separate use in partial realization of his former indivisible and contingent interest in the corporate surplus. It was in substance and effect, not merely in form, a dividend of profits by the corporation, and individual income to the stockholder.

The opinion just delivered in *United States* v. *Phellis*, sufficiently indicates the grounds of our conclusion that the judgment in each of the present cases must be

*Affirmed.*

MR. JUSTICE CLARKE took no part in the consideration or decision of these cases.

MR. JUSTICE VAN DEVANTER and MR. JUSTICE MC-REYNOLDS dissent.