### APPEAL OF H. E. BRUBAKER.

Docket No. 6651.     Decided September 29, 1926.

*Held*, that the taxpayer derived no taxable gain from the reorganization herein.

*J. W. Reavis, Esq.*, and *H. A. Mihills, C. P. A.*, for the petitioner.
*Thomas P. Dudley, Jr., Esq.*, for the Commissioner.

This appeal is from the determination by the Commissioner of a deficiency in income tax for the year 1919 in the amount of $11,004.87.

FINDINGS OF FACT.

The petitioner is an individual residing at Shelby, Ohio.

The Ohio Seamless Tube Co., hereinafter called the old company, was a corporation organized under the laws of the State of Ohio in the year 1912. Its principal office was at Shelby, Ohio, and it owned and operated a seamless tube plant at that place. On or about December 1, 1916, its capital stock consisted of 17,220 shares of common stock of the par value of $100 each, of which the petitioner owned 235 shares.

In December, 1916, the Ohio Seamless Tube Co., hereinafter called the new company, was organized under the laws of the State of Ohio, with a capital stock of 17,220 shares of preferred stock and 72,780 shares of common stock, each share having a par value of $100.

In December, 1916, the stockholders of the old company contracted with the new company to transfer to the new company all of their shares of the old company and to accept in payment therefor one share of the preferred stock and four shares of the common stock of the new company for each share of the stock of the old company. The contract further provided that all the assets of the old company should be conveyed to the new company with the intention that the capital stock of the new company should be supported by the same assets as the capital stock of the old company. Pursuant to the contract of December, 1916, the assets of the old company were conveyed to the new company and the new company assumed all the liabilities of the old company. The new company thereafter owned and operated the same business that had been owned and operated by the old company.

Pursuant to the contract of December, 1916, the stockholders of the old company exchanged their 17,220 shares of common stock, representing all of the stock of the old company, for 17,220 shares of the preferred stock and 68,880 shares of the common stock of the new company. Three thousand nine hundred shares of the common stock of the new company were not issued but were retained by that company and held in its treasury.

The petitioner received in exchange for his 235 shares of the common stock of the old company, 235 shares of the preferred stock and 940 shares of the common stock of the new company. The preferred stock of the new company had, at the date of the exchange, a fair market value of $98 per share, and the common stock of the new company had at that date a fair market value of $55 per share.

The petitioner subsequently purchased 217 shares of the preferred stock and 809 shares of the common stock of the new company for $20,946, and $35,758.25, respectively.

During the year 1919, the petitioner sold 50 shares of the preferred stock and 1,749 shares of the common stock of the new company for the amount of $115,620.

The Commissioner determined that the exchange of the capital stock of the old company for shares of stock of the new company in 1916 did not result in taxable gain to the stockholders of the old company, and that the basis for determining subsequent gain on the sale of the shares of the stock of the new company was the same as for the shares of the stock of the old company, and he has computed the petitioner's gain on the sale of the shares of the stock of the new company made by him during the year 1919 on the basis of the March 1, 1913, value of the shares of the stock of the old company and the cost of such shares of the stock of the new company as were acquired by the petitioner subsequent to the year 1916, and deter- mined that there is a deficiency in tax for the year 1919 in the amount of $11,004.87.

### OPINION.

MARQUETTE: The real question presented here is whether or not the petitioner realized taxable gain in the year 1916 from the exchange of his shares of the capital stock of the old corporation for shares of the capital stock of the new corporation. It is not disputed that if that transaction did not result in taxable gain the determination of the Commissioner should be approved. The petitioner however contends that upon the exchange of stock he realized income to the extent of the difference between the March 1, 1913, value of his shares in the old corporation and the value of the new shares received therefor. In support of his contention he cites the cases of *United States* v. *Phellis*, 257 U. S. 156; *Rockefeller* v. *United States*, 257 U. S. 176; *Cullinan* v. *Walker*, 262 U. S. 134; *Marr* v. *United States*, 268 U. S. 536. The Commissioner contends that the transaction in question did not result in taxable gain to the petitioner and relies on the case of *Weiss* v. *Stearn*, 265 U. S. 242.

The first three cases cited by the petitioner involve· facts dis- tinctly different from those in this appeal, and they are clearly not authority for the conclusion which he seeks to impress upon the Board. The *Phellis* case and the *Rockefeller* case involved transac- tions whereby certain corporate assets, not exceeding accumulated surplus, were segregated and passed to individual stockholders, and the value of the segregated thing so received was held to constitute taxable income. In the *Cullinan* case the gain resulted from a divi-

dend in liquidation actually distributed in the stock of a holding company incorporated under the laws of another State, not organized for the purpose of carrying on the old business and which held no title to the original assets.

In the case of *Weiss* v. *Stearn*, the facts were that under a definite written agreement the taxpayer and other owners delivered the entire capital stock, $5,000,000 of the National Acme Manufacturing Co., an Ohio corporation, to the Cleveland Trust Co., as depositary. Eastman, Dillon & Co. deposited $7,500,000 with the same trust company. Representatives of both classes of depositors thereupon incorporated in Ohio the National Acme Co., the new corporation, with $25,000,000 authorized capital stock and powers similar to those of the old corporation. Pursuant to the purpose for which it was organized, the new corporation purchased and took over the entire property, assets and business of the old corporation, assuming all outstanding contracts and liabilities, and in payment therefor issued to the trust company its entire authorized capital stock. It continued to operate the acquired business and the old corporation was dissolved. The trust company delivered to Eastman, Dillon & Co. certificates for half the new stock—$12,500,000. To the owners of the old stock it delivered certificates representing the remaining half, together with the $7,500,000 cash received from Eastman, Dillon & Co. The owner of each $100 of old stock thus received $150 cash, also $250 of new stock representing an interest in the property and the business half as large as he had before. The collector ruled that each old stockholder sold his entire holdings and assessed the taxpayer accordingly for resulting profits. The District Court and the Circuit Court of Appeals adopted a different view and held that the taxpayer really sold half of his stock for cash and exchanged the remainder, without gain, for the same proportionate interest in the transferred corporate assets and business. The Supreme Court of the United States, affirming the judgment of the Circuit Court of Appeals, said:

We agree with the conclusion reached below. The practical result of the things done was, a transfer of the old assets and business, without increase or diminution or material change of general purpose, to the new corporation; a disposal for cash by each stockholder of half his interest therein; and an exchange of the remainder for new stock representing the same proportionate interest in the enterprise. Without doubt every stockholder became liable for the tax upon any profits which he actually realized by receiving the cash payment. If by selling the remainder he hereafter receives a segregated profit, that also will be subject to taxation.

Petitioner relies upon *United States* v. *Phellis*, 257 U. S. 156, and *Rockefeller* v. *United States*, id. 176; also *Cullinan* v. *Walker*, 262 U. S. 134, which followed them. As the result of transactions disclosed in the *Phellis* and *Rockefeller Cases*, certain corporate assets not exceeding accumulated surplus were segre-

gated and passed to individual stockholders. The value of the segregated thing so received was held to constitute taxable income. Cullinan's gain resulted from a dividend in liquidation actually distributed in the stock of a holding company incorporated under the laws of a foreign State, not organized for the · purpose of carrying on the old business, and which held no title to the original assets.

*Eisner* v. *Macomber*, 252 U. S. 189, gave great consideration to the nature of income and stock dividends. It pointed out that, within the meaning of the Sixteenth Amendment, income from capital is gain severed therefrom and received by the taxpayer for his separate use; that the interest of the stockholder is a capital one and stock certificates but evidence of it; that for purposes of taxation where a stock dividend is declared, the essential and controlling fact is that the recipient receives nothing out of the company's assets for his separate use and benefit. The conclusion was that, "having regard to the very truth of the matter, to substance and not to form, he has received nothing that answers the definition of income within the meaning of the Sixteenth Amendment."

Applying the general principles of *Eisner* v. *Macomber*, it seems clear that if the National Acme Manufacturing Company had increased its capital stock to $25,000,000 and then declared a stock dividend of four hundred per cent., the stockholders would have received no gain—their proportionate interest would have remained the same as before. If upon the transfer of its entire property and business for the purpose of reorganization and future conduct the old corporation had actually received the entire issue of new stock and had then distributed this pro rata among its stockholders, their ultimate rights in the enterprise would have continued substantially as before—the capital assets would have remained unimpaired and nothing would have gone therefrom to any stockholder for his separate benefit. The value of his holdings would not have changed, and he would have retained the same essential rights in respect of the assets.

We can not conclude that mere change for purposes of reorganization in the technical ownership of an enterprise, under circumstances like those here disclosed, followed by issuance of new certificates, constitutes gain separated from the original capital interest. Something more is necessary—something which gives the stockholder a thing really different from what he theretofore had. *Towne* v. *Eisner*, 245 U. S. 418; *Southern Pacific Co.* v. *Lowe*, 247 U. S. 330; *Gulf Oil Corporation* v. *Lewellyn*, 248 U. S. 71. The sale of part of the new stock and distribution of the proceeds did not affect the nature of the unsold portion; when distributed this did not in truth represent any gain.

In the case of *Marr* v. *United States, supra,* the facts were that prior to March 1, 1913, Marr and his wife purchased 339 shares of the preferred and 425 shares of the common stock of the General Motors Company of New Jersey for $76,400. In 1916 they received in exchange for this stock 451 shares of the preferred and 2,125 shares of the common stock of the General Motors Corporation of Delaware which, including a small cash payment, had the aggregate market value of over $400,000. The exchange of securities was effected in this way.

The New Jersey corporation had outstanding $15,000,000 of 7 per cent. preferred stock and $15,000,000 of the common stock, all shares being of the par value of $100. It had accumulated from profits a large surplus. The

actual value of the common stock was then $842.50 a share. Its officers caused to be organized the Delaware corporation, with an authorized capital of $20,000,000 in 6 per cent. non-voting preferred stock and $82,600,000 in common stock, all shares being of the par value of $100. The Delaware corporation made to stockholders in the New Jersey corporation the following offer for exchange of securities: For every share of common stock of the New Jersey corporation, five shares of common stock of the Delaware corporation; for every share of the preferred stock of the New Jersey corporation, one and one-third shares of preferred stock of the Delaware corporation. In lieu of a certificate for fractional shares of stock in the Delaware corporation payment was to be made in cash at the rate of $100 a share for its preferred and at the rate of $150 a share for its common stock. On this basis all the common stock of the New Jersey corporation was exchanged and all the preferred stock except a few shares. These few were redeemed in cash. For acquiring the stock of the New Jersey corporation only $75,000,000 of the common stock of the Delaware corporation was needed. The remaining $7,600,000 of the authorized common stock was either sold or held for sale as additional capital should be desired. The Delaware corporation, having thus become the owner of all the outstanding stock of the New Jersey corporation, took a transfer of its assets and assumed its liabilities. The latter was then dissolved.

The value of the stock in the Delaware corporation received by Marr and his wife exceeded by about $325,000 the cost or March 1, 1913, value of their stock in the New Jersey corporation, and the Treasury Department ruled that this difference was income to them and assessed an additional tax which was paid under protest. The Supreme Court of the United States, holding that the exchange of securities in question resulted in taxable income, said:

In each of five cases named, as in the case at bar, the business enterprise actually conducted remained exactly the same. In *United States* v. *Phellis*, in *Rockefeller* v. *United States* and in *Cullinan* v. *Walker*, where the additional value in new securities distributed was held to be taxable as income, there had been changes of corporate identity. That is, the corporate property, or a part thereof, was no longer held and operated by the same corporation; and, after the distribution, the stockholders no longer owned merely the same proportional interest of the same character in the same corporation. In *Eisner* v. *Macomber* and in *Weiss* v. *Stearn*, where the additional value in new securities was held not to be taxable, the identity was deemed to have been preserved. In *Eisner* v. *Macomber* the identity was literally maintained. There was no new corporate entity. The same interest in the same corporation was represented after the distribution by more shares of precisely the same character. It was as if the par value of the stock had been reduced, and three shares of reduced par value stock had been issued in place of every two old shares. That is, there was an exchange of certificates but not of interests. In *Weiss* v. *Stearn* a new corporation had, in fact, been organized to take over the assets and business of the old. Technically there was a new entity; but the corporate identity was deemed to have been substantially maintained because the new corporation was organized under the laws of the same State, with presumably the same powers as the old. There was also no change in the character of securities issued. By reason of these facts, the proportional interest of the stockholder after the distribution of the new securities was

deemed to be exactly the same as if the par value of the stock in the old corporation had been reduced, and five shares of reduced par value stock had been issued in place of every two shares of the old stock. Thus, in *Weiss* v. *Stearn*, as in *Eisner* v. *Macomber*, the transaction was considered, in essence, an exchange of certificates representing the same interest, not an exchange of interests.

In the case at bar, the new corporation is essentially different from the old. A corporation organized under the laws of Delaware does not have the same rights and powers as one organized under the laws of New Jersey. Because of these inherent differences in rights and powers, both the preferred and the common stock of the old corporation is an essentially different thing from stock of the same general kind in the new. But there are also adventitious differences, substantial in character. A 6 per cent. non-voting preferred stock is an essentially different thing from a 7 per cent. voting preferred stock. A common stock subject to the priority of $20,000,000 preferred and a $1,200,000 annual dividend charge is an essentially different thing from a common stock subject only to $15,000,000 preferred and a $1,050,000 annual dividend charge. The case at bar is not one in which after the distribution the stockholders have the same proportional interest of the same kind in essentially the same corporation.

It may be properly pointed out here that four of the nine justices of the Supreme Court dissented from the majority opinion and contended that the case was within the doctrine of *Weiss* v. *Stearn* and that the transaction did not result in taxable income.

We are of the opinion that the facts of the transaction involved in this appeal bring it within the doctrine of *Weiss* v. *Stearn, supra,* and that it did not result in taxable income to the petitioner. Both the old corporation and the new corporation were organized under the laws of the State of Ohio. The powers of the new corporation presumably were the same as those of the old corporation; it owned the same corporate assets, and for all practical purposes may be regarded as a continuation of the old corporation. It is true that the old corporation had only common stock while the new corporation issued both common and preferred stock, but the new stock, both common and preferred, was distributed among the stockholders of the old corporation in proportion to the stock owned by them in that corporation so that upon the completion of the transaction their new stock evidenced the same proportionate interest in the same assets as did their old stock. In short, it appears that nothing was accomplished by the reorganization that could not have been done by an amendment of the charter of the old corporation, an increase of its capital stock and the declaration of a stock dividend.

It follows from what we have said that the determination of the Commissioner must be approved.

*Judgment for the Commissioner.*

MILLIKEN, STERNHAGEN, and TRAMMELL dissent.