The People of the State of New York ex rel. Clara Louise Neisel, Relator, *v.* John F. Gilchrist and Others, Constituting the State Tax Commission of the State of New York, Respondents.

Third Department, March 2, 1927.

Taxation — income tax — relator's husband gave relator 1,400 shares of stock in 1920 — par value at time of gift was $10 and adjusted book value was $69.05 per share — when adjusted book value was $156.20 per share new corporation was organized which took over property of old corporation — new corporation issued one share of no par value stock and paid $50 in cash for each share of stock of old corporation — adjusted book value of stock of new corporation was then $106.20 per share — said reorganization was apparently made to evade income tax — relator received $70,000 — said amount was gain, profit and income within meaning of Tax Law, § 354.

The relator was given 1,400 shares of stock of a foreign corporation by her husband in January, 1920. The par value of the stock was $10 and adjusted book value $69.05 per share at the time the gift was made. Apparently for the purpose of evading income tax a new corporation was formed which took over the property of the old corporation and issued to the stockholders of the old corporation one share of no par value stock for every share of stock held in the old corporation and paid $50 in cash to the stockholders for each share held in the old corporation. At the time of the reorganization the adjusted book value of the stock was $156.20 per share but after the exchange had been made and the money paid as stated, the adjusted book value was $106.20 per share. The $70,000 in cash which was paid to the relator on the reorganization is gain, profit and income within the meaning of section 354 of the Tax Law and is subject to income tax.

Certiorari order granted out of the Supreme Court on the 13th day of February, 1926, directed to John F. Gilchrist and others, commanding them to certify and return to the office of the clerk of the county of Albany, all and singular their proceedings had in fixing the income tax of the relator under article 16 of the Tax Law for the taxable year 1922.

*Laurence Graves,* for the relator.

*Albert Ottinger, Attorney-General* [*Henry S. Manley, Deputy Attorney-General,* of counsel], for the respondents.

Whitmyer, J. In January, 1920, relator received 1,400 shares of stock of the Funk & Wagnalls Company, a West Virginia corporation, as a gift from her husband. At that time the par value was $10 and the adjusted book value $69.05 per share. On December 30, 1922, the stockholders of the corporation exchanged their shares therein for stock of the Funk & Wagnalls Company of Delaware, a corporation organized to take over its business, and

each stockholder received one share of stock, no par value, of the Delaware corporation and $50 in cash for each share owned in the West Virginia corporation.  Just before the exchange the adjusted book value of the stock of the West Virginia corporation was $156.20 per share and, just after, the adjusted book value of the stock of the Delaware corporation was $106.20 per share.  The new stock and the cash payment of $50 per share equalled the adjusted book value of the old stock.  Relator received 1,400 shares of the new stock and $70,000 in cash.  She did not report the cash in her income tax return for the taxable year 1922, but it was included in the course of audit, the tax was recomputed, and an additional tax of $1,545.43 was found.

Whether or not the cash so received is taxable income is the question.

The West Virginia corporation had an authorized capital of 100,000 shares, par value $10 each, and 91,681 shares had been issued.  The business was profitable.  The shares were closely held. The stockholders did not exceed 100.  Ten per cent of them owned about ninety-five per cent of the stock.  It did not have a readily ascertainable market value, but its adjusted book value, as of the time when relator received her stock and the time when she transferred it, shows that its actual value had appreciated greatly. In this connection, a comparison of the closing balance sheet of the West Virginia corporation with the opening one of the Delaware corporation is illuminating.  They were made as of December 30, 1922.  The former shows the condition of the old corporation just before transfer of assets and the latter the condition of the new just after such transfer.  The items of assets are the same in each.  That is true, also, of the items of liabilities, except " accounts payable," " earned surplus " and " capital surplus." In the West Virginia sheet the accounts payable total $44,960.26, in the Delaware $4,629,010.26, namely, the amount of the West Virginia item plus $4,584,050 from earned surplus of that corporation, or $50 per share on each one of the 91,681 issued shares. Then, the " earned surplus " item, which appears as $6,435,253.21 in the West Virginia sheet, does not appear in the Delaware sheet, but the balance of $1,851,203.21, remaining after taking said $4,584,050 therefrom and transferring same to " accounts payable " as above and the items " Capital stock (less Treasury stock) $916,810.00 " and " Capital surplus, $6,968,895.50," of the West Virginia corporation, were merged with " Capital stock no par value " of the Delaware corporation, making $9,736,908.71 for that item in the Delaware sheet.

In December, 1922, the West Virginia corporation had a capital

surplus of $6,968,895.50 and an earned surplus of $6,435,253.21 and each share had a book value of $156.20. At that time, its assets, subject to its liabilities, were transferred to and taken over by the Delaware corporation, which was created for the purpose, and relator received 1,400 shares of stock in that corporation and $70,000 in cash. The book value of that stock was $106.20 per share and, with the $50 in cash for each share of the old, equalled the book value of the old. Thus, relator owned as many shares in the new as she had owned in the old, her interest in the new was the same as it had been in the old, the book value of each share in the new greatly exceeded the book value, $69.05, of each share of the old as of the date when she received it, and she had $70,000 in cash.

The new corporation was created as a medium or agency to effect a distribution of a large part of the earned surplus of the old among its stockholders, without subjecting them to the payment of Federal and State income taxes thereon and, to accomplish the purpose, all of the assets of the old were given to and taken over by the new, which had no other assets. In form, the distribution was by the new corporation, in substance and effect it was by the old. The cash distributed was a dividend or a distribution in the nature of a dividend by the old through the new. (*Rockefeller* v. *U. S.*, 257 U. S. 176, 182, 183.) It is gain, profit and income within the meaning of section 354 of the Tax Law, added in its present form by Laws of 1922, chapter 429, effective April 1, 1922. It would not be so considered under the Federal Revenue Act of 1921, but comparison with section 202 thereof confirms the conclusion. (See 42 U. S. Stat. at Large, 229–231, § 202.) That act was passed in November, 1921, to facilitate consolidations and reorganizations in aid of business. Subdivision (e) of section 202 provides in a case " where property is exchanged for other property which has no readily realizable market value, together with money or other property which has a readily realizable market value, then the money or the fair market value of the property having such readily realizable market value received in exchange shall be applied against and reduce the basis, provided in this section, of the property exchanged, and if in excess of such basis, shall be taxable to the extent of the excess." Here, relator received $70,000 in cash. The basic value of her old stock, at the adjusted book value of $69.05 per share, as of the time of the gift thereof to her, was the sum of $96,670. After applying the cash against such basic value, there was a deficiency of $26,670, so that, under that act, computation of tax would be deferred. Up to the time of its passage, it had been the policy of our Legislature to make compu-

tation of income, under the State Income Tax Law, identical with such computation under the Federal act, so far as possible. But present section 354 of the Tax Law marked a departure. It was passed at the first session after the passage of the Federal act and, while it follows paragraph (2) of subdivision (c) of section 202 of that act (42 U. S. Stat. at Large, 230) by providing that no gain or loss shall be recognized when stockholders receive " stock or securities in a corporation a party to or resulting from such reorganization," it omits the provision in subdivision (e) of section 202, above. The omission is significant. Moreover, the report of the special joint committee on taxation and retrenchment, submitted March 1, 1922 (N. Y. Legis. Doc. 1922, vol. 15, No. 72, pp. 72, 73, 77), accompanying the bill, shows beyond doubt that the Legislature did not intend to go to the limit of the Federal act in postponing the time of computation and payment of taxes in cases of this kind.

The determination should be confirmed, with fifty dollars costs and disbursements.

VAN KIRK, Acting P. J., HINMAN, McCANN and DAVIS, JJ., concur.

Determination confirmed, with fifty dollars costs and disbursements.