S. R. ROSEBERG, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 14383.   Promulgated September 24, 1928.

*Alfred L. Black, Esq.*, for the petitioner.
*C. H. Curl, Esq.*, and *I. W. Carpenter, Esq.*, for the respondent.

OPINION.

MILLIKEN: The facts were stipulated and our findings of fact are in accord with the stipulation.

In 1920 petitioner was the owner of property which cost or had a fair market value as of March 1, 1913, of $223,002.03. In September of that year petitioner organized the Roseberg Oil Corporation with a capital stock of the par value of $300,000, and transferred said property to said corporation in consideration of all its capital stock except two qualifying shares. The property so transferred had on the date of transfer a ready realizable market value of $247,406.98, and the stock received by petitioner was of the same value as the property transferred. The applicable provisions of the Revenue Act of 1918 are sections 213 and 202. Section 213 in part provides:

> The term "gross income"—
> (a) Includes gains, profits, and income derived from * * * sales, or dealings in property, whether real or personal.

The pertinent portion of section 202 provides:

> (b) When property is exchanged for other property, the property received in exchange shall for the purpose of determining gain or loss be treated as the equivalent of cash to the amount of its fair market value, if any, * * *.

It is conceded in the brief filed in behalf of petitioner that if this transaction be considered simply as one between two different entities, it resulted in taxable income, but it is contended that, since petitioner on the morning of the day the transaction was consummated was the owner of the property and on the evening of the same day was the owner of all the capital stock of the corporation except the two qualifying shares, he had substantially the same property interests in the evening that he had in the morning with the result that he was in receipt of no taxable gain.

The converse of this proposition was presented to the Board in *E. C. Huffman*, 1 B. T. A. 52, and *John K. Greenwood*, 1 B. T. A. 291. In the first proceeding the facts were that a corporation was dissolved and the assets thereof were conveyed to the stockholders as partners, the individuals holding the same proportionate interests in the partnership that they held in the corporation. In the *Greenwood* case the facts were that Greenwood was the owner of all the stock of a corporation and upon its dissolution acquired all its assets. In both cases the same contention was advanced that is made in this proceeding, which is that we should disregard the corporate entity and hold that, since the interests of the individuals were the same in the corporation as in the assets of the corporation after dissolution, no taxable gain could result. In both cases we held adversely to this contention. In the *Greenwood* case we said:

We have recently held in Appeal of *E. C. Huffman*, 1 B. T. A. 52, that the dissolution of a corporation and the transfer of its capital and surplus to a partnership, the members of which have the same proportionate interests, results in taxable income to the stockholder notwithstanding he in fact took nothing out of the business. In that case the Board said:

" Since all of the assets remained in the business and nothing was actually distributed, the taxpayer, a former stockholder and later partner, claims that he received no taxable income. To him it appears that his financial interest was precisely the same after the reorganization as before. But as a·matter of law this is not so. As a stockholder of the former corporation he was not directly an owner of its assets; as a member of the partnership he was. This legal distinction is a matter of substance and not merely of form. The Supreme Court has left no room for doubt that a corporation must be regarded for purposes of the income tax law as an entity separate and distinct from its shareholders. *Eisner* v. *Macomber*, 252 U. S. 189, 214; *United States* v. *Phellis*, 257 U. S. 156; *Cullinan* v. *Walker*, 262 U. S. 134."

The principle announced in the above case is applicable here and the distinction between a corporation and its stockholders is preserved even where one person owns all the capital stock. *Peterson* v. *Chicago, etc., R. Co.*, 205 U. S. 384; *Appeal of Winthrop Ames*, 1 B. T. A. 63. The fact that the assets of the corporation were not converted into cash and that the taxpayer at no time received cash for his stock we regard as immaterial for the reason that income may be derived from a distribution of assets in kind as well as from a conversion of such assets into cash and a distribution of the cash. The essential thing is gain derived from capital, whether it flows from capital or is derived from a conversion of capital as an increase in capital value. Both are equally income within the meaning of the law, and the manner of distribution cannot affect the principle which is to control.

See also *Estate of D. F. Buchmiller*, 1 B. T. A. 380; *J. H. Morrow, Administrator*, 1 B. T. A. 1148; and *Joseph Joseph, et al*, 6 B. T. A. 595.

In *Napoleon B. Burge, et al*, 4 B. T. A. 732, the facts were that certain tenants in common in 1919 exchanged their undivided interests in property for the capital stock of a corporation, the

individuals owning the same proportionate interests in the corporation that they had owned in the property. In that proceeding, as in this, the value of the stock received in exchange was in excess of the cost of the property exchanged for the stock. The respondent determined that this excess constituted taxable income and the Board affirmed his determination. There, as here,.the petitioner relied upon *Weiss* v. *Stearn*, 265 U. S. 242. After discussing that case and *Marr* v. *United States*, 268 U. S. 536, we said :

The taxpayers here say that by the exchange of leases for stock none of the stockholders gained anything really different from what they had had prior to the. exchange; that the appreciation in value of the property before the transfer was evidenced by instruments of writing showing undivided interests in the oil leases and after the transfer this appreciation was evidenced by certificates of stock reflecting identically the same undivided interests, owned by the same persons.

There might be some grounds for saying that the stock certificates held by the stockholders represent the same *amount* of interest in the leases as they had owned before the transfer, but to say that they represent the " same undivided interests " is not accurate nor in accordance with the settled law. Prior to the exchange the taxpayers held title to their interests in the leases with all the incidents of complete ownership; after the exchange the corporation had title, legal and equitable, to the whole property. *Eisner* v. *Macomber*, 252 U. S. 189, 208.

The taxpayers further urge that the change of ownership of the leases was a change in form and not in substance; the tenants in common created the corporation to serve them, controlled the corporation entirely, and in substance had nothing more than they had before the transfer. We think it immaterial that the former tenants in common controlled the corporation, as the fact remains that they and the corporation were separate entities. This fact is one that can not be ignored and the distinction between a corporation and its stockholders for income-tax purposes is a legal distinction of substance and not merely of form. *Eisner* v. *Macomber*, 252 U. S. 189, 214; *Cullinan* v. *Walker*, 262 U. S. 134. And whether the stockholders had anything *more* after receiving the corporate stock than they had before is not the test. *United States* v. *Phellis*, 257 U. S. 156, 171; *Rockefeller* v. *United States*, 257 U. S. 176, 183. The true test is laid down in *Weiss* v. *Stearn*, 265 U. S. 242, where the court says, at page 254, that, if a stockholder is to be taxed on an exchange of property the transaction must be " something which gives the stockholder something really different from what he theretofore had." This test, when applied here, gives the real solution to the question. The taxpayers, prior to the exchange, had the direct ownership, hence complete and full control, over their interests in the leases; after the exchange they were at most beneficial owners of the assets of the corporation, their shares therein being evidenced by stock certificates which carried with them no direct right of ownership in the assets. *Appeal of E. C. Huffman*, 1 B. T. A. 52, and cases therein cited. In other words, by this transaction the taxpayers received shares of stock which were property of a distinctly different kind from, and having entirely different attributes than, the property paid in by them.

See also *George A. Ricker, et al*, 10 B. T. A. 11.

On the authority of the above cases we are of opinion that respondent was not in error in determining that petitioner was in receipt of

taxable income by reason of the exchange of his property for the stock of the corporation.

With respect to the transaction occurring in the year 1921, it is contended that the final result of all the exchanges was simply to introduce Batchelder as a stockholder in the corporation. Whatever may be the merit of this contention, a point we do not decide, it disregards the facts of the case which were that petitioner purchased the property of Batchelder with stock of the corporation. It thus became petitioner's property. He then exchanged this property for assets of the corporation. These assets immediately ceased to be the property of the corporation and became the property of petitioner. Under the facts as stipulated it is clear that petitioner was in receipt of taxable income to the extent of the difference between the cost to him of the 950 shares transferred to Batchelder and the market value of the amounts received from the corporation, to wit, $176,750. The contention that these transactions were the equivalent of a reorganization is untenable. Whatever may be the definition of the term " reorganization," it is sufficient to say that these transactions did not in any sense constitute a " reorganization of one or more corporations " as that term is used in section 202 (c) (2) of the Revenue Act of 1921.

Stock or securities were not received in place of stock or securities, but the corporation acquired a refinery from petitioner. There was no merger, consolidation, recapitalization or change in identity, form, or place of organization of the corporation. Neither does petitioner benefit by the provisions of section 202 (c) (3) in that he was not " in control " of the corporation as that term is defined by statute.

*Judgment will be entered under Rule 50.*