### PETREE v. UNITED STATES.

### LUTTRELL v. SAME.

District Court, E. D. Tennessee, N. D.
October 31, 1928.

Nos. 1953, 2006.

Forrest Andrews, of Knoxville, Tenn., for plaintiffs.

Ralph S. Scott, Sp. U. S. Atty., of Washington, D. C., and Geo. C. Taylor, U. S. Atty., of Knoxville, Tenn.

HARRY B. ANDERSON, District Judge. The above suits were started by L. J. A. Petree and S. B. Luttrell against the United States to recover $2,815.43 and $4,322.23, respectively, paid as additional income tax for the year 1917. The two cases were consolidated and heard as one action. The plaintiffs base their suit upon the alleged erroneous computation by the government of the gain realized on the sale of their capital stock in the Black Diamond Collieries Company.

The plaintiffs claim that the March 1, 1913, value of the stock held in the Black Diamond Coal Company should be used as cost in determining the profit realized on the sale of their stock in the Black Diamond Collieries Company in 1917. On the other hand, the government contends that the cost of the said stock sold is the amount paid for the assets by Black Diamond Collieries Company at the bankruptcy sale in 1915.

## Facts.

The Black Diamond Coal Company was organized in 1896 under the laws of the state of New Jersey with a capital stock of $212,000, for the purpose of mining and manufacturing coal products. Shortly thereafter the Coal Creek Mining & Manufacturing Company made a lease to the Black Diamond Coal Company of certain coal lands in Tennessee, more particularly described in Exhibit A to the declaration. Paragraph 15 of said lease provides that the lessee could not assign or sublet, and that no judicial sale or conveyance under writ of execution or by proceedings in bankruptcy shall have the effect to transfer the interest in said lease unless written consent of the lessor be first obtained. Prior to March 1, 1913, Messrs. Lucky, Luttrell, and Petree were owners of approximately 63 per cent. of the stock in the Black Diamond Coal Company, of which amount Lucky owned 33.046 per cent., S. B. Luttrell, 34.339 per cent., and L. J. A. Petree, 32.615 per cent.

In the summer of 1915, the Black Diamond Coal Company filed a voluntary petition in bankruptcy in the United States District Court at Knoxville, Tenn., and was duly adjudged a bankrupt on the 4th day of August, 1915; thereafter the referee entered an order providing for the sale of the property of the said bankrupt. In strict accordance with the advertisement, the referee offered for sale at public auction as a going concern all of the real estate, leasehold interests, mining cars, and assets of every description, as shown on the schedules of the bankrupt. The Black Diamond Collieries Company, a new corporation organized under the laws of Tennessee, bid in the property, which included the leasehold, for the sum of $77,939.90. This amount was advanced by Messrs. Lucky, Luttrell, and Petree, who received in exchange for said advance, 450 shares ($45,000 par value), which was the entire capital stock of the Black Diamond Collieries Company. They continued to hold the stock until the sale thereof in 1917.

Just prior to the filing of the bankruptcy petition, Messrs. Lucky, Luttrell, and Petree secured from the Coal Creek Mining & Manufacturing Company, lessor, written consent (Exhibit B to the declaration) to permit the transfer of the lease held by the Black Diamond Coal Company to the new corporation, the Black Diamond Collieries Company, which was organized by Messrs. Lucky, Luttrell, and Petree to take over the business of the bankrupt.

On the 30th day of June, 1917, the Messrs. Lucky, Luttrell, and Petree sold all of their stock in the Black Diamond Collieries Company, to wit, 450 shares, being all the stock of the said company then outstanding, to Reuben Robertson, Canton, N. C., for the sum of $250,000.

## Statutes.

Basis for determining gain or loss under section 202 of the Revenue Act of 1918 (40 Stat. 1060):

"(a) That for the purpose of ascertaining the gain" to be "derived or loss sustained from the sale or other disposition of property, real, personal, or mixed, the basis shall be—

"(1) In the case of property acquired before March 1, 1913, the fair market price or value of such property as of that date; and

"(2) In the case of property acquired on or after that date, the cost thereof. * * * "

## Issues Involved.

Was the March 1, 1913, value of the stock held by the plaintiffs in the Black Diamond Coal Company the cost of the stock of the Black Diamond Collieries Company which was sold by them in 1917? Or

Should the amount advanced by the plaintiffs to the Black Diamond Collieries Company to purchase the assets of the bankrupt in 1915 be used as cost for the purpose of computing the gain on the sale of the plaintiffs' stock?

It can hardly be seriously contended that the sale through bankruptcy was a reorganization under the tests laid down by the decisions of the Supreme Court. The controlling decisions are: Marr v. U. S., 268 U. S. 536, 45 S. Ct. 575, 69 L. Ed. 1079; Peabody v. Eisner, 247 U. S. 347, 38 S. Ct. 546, 62 L. Ed. 1152; Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570; U. S. v. Phellis, 257 U. S. 156, 42 S. Ct. 63, 66 L. Ed. 180; Rockefeller v. U. S., 257 U. S. 176, 42 S. Ct. 68, 66 L. Ed. 186; Cullinan v. Walker, 262 U. S. 134, 43 S. Ct. 495, 67 L. Ed. 906; Weiss v. Stearn, 265 U. S. 242, 44 S. Ct. 490, 68 L. Ed. 1001, 33 A. L. R. 520.

The following tests, in substance, have been laid down by the Supreme Court on the question whether or not a reorganization of a corporation has been made:

(1) Has any change taken place in the corporate identity; that is, has the same corporation held and operated the same corporate property as before the reorganization?

(2) Is the new corporation incorporated under the laws of the same state, or has the new charter been secured from some other state, changing the rights and powers of the corporation as to the holding of stock and the stockholder's rights thereunder?

(3) Is the new stock issued in the new corporation substantially the same as in the old corporation, and representing the same proportional interest of the same kind as the old stock in essentially the same corporation?

(4) Have or have not the business and assets of the old corporation been materially changed under the charter of the new corporation?

(5) Have or have not the stockholders in the new scheme received nothing differing in substance from what the stockholders had in the old corporation—has anything been severed from their original capital interest in the old corporation?

Applying the above tests in the case at bar, it would appear that the rights of the stockholders in the new corporation were entirely different, and that the old corporation was incorporated under the laws of New Jersey and the new corporation under the laws of Tennessee, and that the stock issued in the new corporation was entirely different from that of the old corporation. The business and assets of the old corporation were not materially changed under the new charter, but the interest and rights of the old stockholders were absolutely wiped out by bankruptcy.

A sufficient answer seems to be that the minority stockholders holding 37 per cent. in the old corporation lost the entire value of their stock absolutely, and, if it were an actual loss to them, it was likewise to the plaintiffs holding 63 per cent. of the stock, and it is clear that under test 5, supra, the interests of the stockholders were entirely changed, and in fact their holdings were wiped out. This worked an actual loss to all of the stockholders, which was deductible from income from the year 1915, the year of the bankruptcy of the Black Diamond Coal Company. It cannot be seriously contended that the means used by the plaintiffs to compel minority stockholders to shoulder some of the responsibility of operation of the company or to suffer an entire loss of their stock in the company did not work an actual liquidation of the corporation in the bankruptcy proceedings. This answer seems conclusive of the case.

It is insisted that the leasehold was not an asset which could be transferred by the court of bankruptcy, due to the provision in the lease forbidding a transfer in such a manner, and that plaintiffs personally acquired from the lessor the power and authority to convey to the Black Diamond Collieries, and that the leasehold had upon it physical property and improvements of the value of $154,000, and that the value should be figured into the cost of the stock to the plaintiffs. The records show conclusively that the lessor in writing permitted the bankrupt lessee to convey to a new corporation, plaintiffs joining in the contract undertaking to form such a corporation, which should be satisfactory to the lessor. The record further shows that the leasehold was actually sold through the bankruptcy proceedings by the trustee to the Black Diamond Collieries, and it does not disclose that plaintiffs paid the lessor anything of value for its permission to transfer the leasehold. Hence plaintiffs paid nothing for the leasehold, but it was transferred directly by the trustee in bankruptcy to the Black Diamond Collieries, with the permission of the lessor. Plaintiffs were only interested to make sure that under their plan of liquidating the old corporation the lessor would agree to it and would permit a transfer to the new corporation in spite of the provision of the lease to the contrary.

It is again insisted that plaintiffs made a taxable profit or income in 1915 on the transaction, amounting to the difference between the value of the property as acquired at the bankruptcy sale and what was paid for the property at the bankruptcy sale. I cannot follow the reasoning. The minority stockholders, through bankruptcy, lost their entire investment. This fact cannot be doubted. The plaintiffs lost their investment. They no doubt sustained a heavy loss in 1915, which was deductible from income. There certainly can be no profit when there has been an actual loss. It is doubtless true that the assets of the old corporation at the sale in bankruptcy brought less than their actual value, but the plaintiffs individually did not purchase the assets at the sale, as the trustee in bankruptcy conveyed directly to the Black Diamond Collieries and the plaintiffs merely financed the purchase, for which there was issued to them the entire capital stock of the new corporation. Hence they did not buy and sell, and therefore make a taxable profit on the assets of the old corporation.

If the method of acquiring all the stock in the Black Diamond Collieries, as reflected in the records, cannot be held to be a reorganization, and I so hold, then the only question for determination is the cost to plaintiffs of their stock in the corporation in 1915.

566

It is not disputed that the plaintiffs advanced in the case the sum of $77,939.90 to acquire the assets at the bankruptcy sale. It is shown that they did not transfer the leasehold to the corporation. The sale price is not disputed, and was $250,000. It is argued that, whether or not the transaction is viewed as a lawful reorganization, the profit made in 1917 was the difference between the value of their stock in 1915 less the amount paid therefor to the trustee in bankruptcy and the sale price in 1917. The stock had no value in 1915, and was rendered worthless and a total loss by the proceedings in bankruptcy. The property brought an amount of money equal to the debts of the corporation and the court costs of the bankruptcy proceedings. It is apparent that the parties have not clearly distinguished their rights and interests in the old corporation and do not thoroughly appreciate the legal effect of the bankruptcy of the old corporation and the sale of its assets.

The law does not permit value to be inquired into unless the stock was acquired prior to March 1, 1913, and the stock upon which the tax was assessed was acquired by plaintiffs in 1915.

All the insistences of the plaintiffs have been carefully considered, and I find them unsound. They are based upon a confusion of the legal principles out of which their rights grow. I can see nothing in the records except these facts, and I conceive them to be controlling:

That the company was adjudged a bankrupt in 1915 and *all stockholders* lost their investment and the stock was rendered valueless; that the new corporation directly became the purchaser of all the assets of the old corporation, including the leasehold; that plaintiffs financed the transaction with their private funds; that the new corporation issued its entire capital stock to the plaintiffs for the amount advanced by them in financing the transaction; that this amount was the cost of the stock to them; that subsequently the stock sold at an undisputed figure upon which they have paid an income tax.

It is a hard case because plaintiffs lost a large amount of money in the Black Diamond Coal Company and were unable under the law to deduct that loss from the profit made by them in the sale of the stock in the new corporation in 1917, just two years later. If the entire transaction cannot, under the authorities, be held a reorganization, there is no relief to be had.

Let judgment be entered for defendant in both cases.