*Decision will be entered under Rule 50.*

MATTHIAS W. WILDSCHUTZ, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 27854.   Promulgated April 9, 1931.

*Ralph J. Anderson, Esq.*, for the petitioner.
*T. M. Mather, Esq.*, for the respondent.

OPINION.

BLACK: The respondent filed an amended answer in which it was alleged that the petitioner had received during the year 1922 dividends to the amount of $5,799.75, which had not been reported and that petitioner's net income should be increased by that amount for surtax purposes. At the hearing the petitioner admitted this was correct and upon recomputation the amount of the dividends will be added to petitioner's income. The contention of the petitioner is that the exchange of his stock in the corporation of Green-Wildschutz Royalty Company for the nine-tenths of one per cent royalty in the Green property was merely an exchange of royalty interests for other royalty interests and that the petitioner is only chargeable with the difference in the amount and value of the royalties as income, which he estimates to be three-fiftieths of one per cent, or $678.45.

It is further contended by the petitioner that the Board should disregard and look through the corporate entity and that in so doing, it would be apparent that there is no taxable profit from the transaction, except as to the excess in value of the oil royalty which he received in exchange over the value of the oil royalty represented by the stock which he gave in exchange. Petitioner claims that his interest was practically the same before and after the exchange, viz., the right to take oil in form of royalty from the same wells on the same property, the only difference being in the evidence of his ownership or interest. He contends that ownership was evidenced before the exchange by units or shares of stock and after the exchange by an assignment of royalty. In making this contention, petitioner argues that he was the owner of 784 shares out of

1144

2,800 shares of the corporation and that therefore he was the owner of 784/2800 of 3 per cent royalty on the Green property. This is equivalent to 7/25 of 3 per cent or 21/25 of one per cent of the oil produced from the Green property. After the exchange he was the owner of 9/10 of one per cent of the oil from the Green property, which is the equivalent of 45/50, which is only 3/50 more than the 21/25 or 42/50 of one per cent which he owned before the exchange, which he concedes to be of the value of $678.45.

In the first place, this argument overlooks the fact that the corporation was not only the owner of 3 per cent of the Green royalties, but it was also the owner of a 2 per cent royalty, a 1 per cent royalty, and a one-fifth of 1 per cent royalty from all the oil and gas produced and saved on certain other lands not necessary to be described here in detail, but fully described in the assignment of royalties made by the Wildschutz-Harrison Green Royalty Association to Green-Wildschutz Royalty Company October 1, 1921; but, even if the corporation had only owned the Green royalties, the argument would not be valid.

This argument disregards the corporate entity Green-Wildschutz Royalty Company. A similar question was before us in *Napoleon B. Burge*, 4 B. T. A. 732, where the owners of undivided interests in oil leases transferred them to a corporation in exchange for the capital stock of the corporation. It was held to be a taxable transaction, and although that was a case where the taxpayer exchanged an interest in oil royalties for corporate stock, whereas in the instant case the taxpayer exchanged corporate stock for an interest in oil royalties, the reasoning and decision in that case apply with equal force to the facts in the instant case. The Board there said:

The taxpayers contend that they realized no taxable gain upon the transfer to the corporation of their undivided interests in the leases in exchange for capital stock of the corporation, the transfer being such as affected the form of ownership only and was not one of substance.

*         *         *         *         *         *         *

There might be some grounds for saying that the stock certificates held by the stockholders represent the same *amount* of interest in the leases as they had owned before the transfer, but to say that they represent the "same undivided interests" is not accurate nor in accordance with the settled law. Prior to the exchange the taxpayers held title to their interests in the leases with all the incidents of complete ownership; after the exchange the corporation had title, legal and equitable, to the whole property. *Eisner* v. *Macomber*, 252 U. S. 189, 208.

The taxpayers further urge that the change of ownership of the leases was a change in form and not in substance; the tenants in common created the corporation to serve them, controlled the corporation entirely, and in substance had nothing more than they had before the transfer. We think it immaterial that the former tenants in common controlled the corporation, as the fact remains that they and the corporation were separate entities. This fact

is one that can not be ignored and the distinction between a corporation and its stockholders for income-tax purposes is a legal distinction of substance and not merely of form. *Eisner* v. *Macomber*, 252 U. S. 189, 214; *Cullinan* v. *Walker*, 262 U. S. 134. And whether the stockholders had anything *more* after receiving the corporate stock than they had before is not the test. *United States* v. *Phellis*, 257 U. S. 156, 171; *Rockefeller* v. *United States*, 257 U. S. 176, 183. The true test is laid down in *Weiss* v. *Stearn*, 265 U. S. 242, where the court says, at page 254, that, if a stockholder is to be taxed on an exchange of property the transaction must be "something which gives the stockholder something really different from what he theretofore had." This test, when applied here, gives the real solution to the question. The taxpayers, prior to the exchange, had the direct ownership, hence complete and full control, over their interests in the leases; after the exchange they were at most beneficial owners of the assets of the corporation, their shares therein being evidenced by stock certificates which carried with them no direct right of ownership in the assets. *Appeal of E. C. Huffman*, 1 B. T. A. 52, and cases therein cited. In other words, by this transaction the taxpayers received shares of stock which were property of a distinctly different kind from, and having entirely different attributes than, the property paid in by them.

See also *T. B. Noble*, 12 B. T. A. 1419; *C. A. O'Meara*, 11 B. T. A. 101; *S. R. Roseberg*, 13 B. T. A. 503; *J. D. Bigger*, 19 B. T. A. 797.

Under these decisions and many others we have held that the corporate entity can not be disregarded and that shares of stock in a corporation and rights under oil leases are distinct and different things although both were related to or based on the same leases. Manifestly, the same rule applies here, although in this case the final exchange was the reverse of that in the *Burge* case. In fact there were more points of difference, for in this case the shares of stock represented interests in all of the royalties originally held by petitioner, Green and Robinson, while the royalty he received was derived only from that of Green, while in the *Burge* case they were the same. We conclude that the exchange of petitioner's stock in the Green-Wildschutz Royalty Company for the nine-tenths of one per cent royalty in the Green lease was a taxable transaction. We have examined the cases cited by petitioner relative to disregarding the corporate entity and do not think they apply here. They are not tax cases, but involve questions of fraud or claims against bankrupt estates.

In making his determination of the deficiency the respondent did not fix the cost or market value of the stock in the corporation. The stock which petitioner owned in Green-Wildschutz Royalty Company was received in exchange for royalty units which he owned in Wildschutz-Harrison Green Royalty Association, a common law trust, and which latter transaction was not taxable under section 202 (c), Revenue Act of 1921. Under section 202 (d) (1), of the Revenue Act of 1921, the stock which petitioner received in the corporation took the same basis of cost as the certificates of interest

1146

which he owned in the Wildschutz-Harrison Green Royalty Association. Said section 202 (d) (1) reads: "Where property is exchanged for other property and no gain or loss is recognized under the provisions of subdivision (c), the property received shall, for the purposes of this section, be treated as taking the place of the property exchanged therefor, except as provided in subdivision (e)." In this proceeding the burden of proof is upon the petitioner to show error on the part of the respondent. Respondent has found the value of the nine-tenths of one per cent royalty received by petitioner in the exchange to be $12,644.68 and petitioner has not contested that valuation. No evidence has been introduced to show either the cost of the original royalty interests to the petitioner, or the cost or market value of the certificates of interest in the common law trust, or the cost or market value of the shares of stock exchanged by petitioner to Green. Under these circumstances, we must approve the action of the respondent. *Simon Jankowsky*, 18 B. T. A. 1039.

*Decision will be entered under Rule 50.*