## METCALF'S ESTATE v. COMMISSIONER OF INTERNAL REVENUE.

Circuit Court of Appeals, Second Circuit. April 8, 1929.

No. 274.

Ehrich, Royall, Wheeler & Walter, of New York City (Ralph Royall, of New York City, of counsel), for petitioners.

Mabel Walker Willebrandt, Asst. Atty. Gen., J. Louis Monarch and John Vaughan Groner, Sp. Asst. Attys. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and D. V. Hunter, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge. The petitioners, executors of the estate of Edwin D. Metcalf, appeal from the determination of the Board of Tax Appeals, which held they must pay an income tax on the sale of rights in 1921. Rev. Act 1926, c. 27, 44 Stat. 9, 109, 110. The decedent was a stockholder of the Southern Pacific Company and his executors received purchase rights to shares of stock of the Pacific Oil Company under the following circumstances:

On December 1, 1920, the board of directors of the Southern Pacific Company advised its stockholders of a plan they adopted for the separation of its California oil properties. The essential feature of the plan was the organization of the Pacific Oil Company, with a capital stock of 3,500,000

shares, of no par value. It allocated one share of stock of the Pacific Oil Company to each share of the Southern Pacific Company. The latter company subscribed for shares of the Pacific Oil Company at $15 per share, and turned over to the Pacific Oil Company the California properties, and received a purchase price of $47,250,000. This left in the treasury of the Pacific Oil Company a fund for working capital. The Southern Pacific Company then issued to each of its stockholders the right per share to subscribe to one share of capital stock of the Pacific Oil Company at $15 per share. The stock of the Southern Pacific Company and the Pacific Oil Company were listed on the New York Stock Exchange and actively bought and sold. On February 7, 1921, the Southern Pacific Company stock was sold with rights and quoted at 96 low, 97½ high; on February 8th, it was sold ex rights at 78¼ low, 79⅞ high. The rights were sold on February 8th at 33⅝ low and 34¼ high. The subscription cost of $15 per share would make the rights worth $18 per share. The estate sold its rights for $18 a share.

It is argued that, if the estate had sold its Southern Pacific stock, including its rights, at the market on February 7, 1921, it would have suffered a loss of $5.50 per share, because, when the decedent died in 1915, the stock was assessed for the New York transfer inheritance tax at $102.50 per share, and on February 7th it was selling at 97. It is said that if, on February 8th, it sold its shares of stock as well as its rights, it would have received 97—rights $18 and stock 79—and it is argued that, selling its rights alone, it suffered a proportionate loss. The question presented is whether, by the selling of these rights, the petitioner received taxable income, under section 211 of the Revenue Act of 1921 (42 Stat. 227). As the term "dividend" is used in the act of 1921, section 201 defines it as meaning any distribution by a corporation to its stockholders or members, whether in cash or other property, out of its earnings or profits accumulated since February 28, 1913. By section 213 gross income includes dividends paid to distributees. The Commissioner contends that these rights were the equivalent of dividends received, and as such liable to a tax. A stock dividend of a corporation issuing it is not taxable income. Towne v. Eisner, 245 U. S. 418, 38 S. Ct. 158, 62 L. Ed. 372, L. R. A. 1918D, 254; Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570. This was held to be so because a stock dividend takes nothing from the property of the corporation, and adds nothing to the interest of the shareholder. In Peabody v. Eisner, 247 U. S. 347, 38 S. Ct. 546, 62 L. Ed. 1152, the Union Pacific Railroad Company declared a dividend partly in cash and partly in preferred and common stock of the Baltimore & Ohio Railroad Company. The tax imposed on this dividend was paid under protest. The Supreme Court approved the tax, saying the case was not ruled by Towne v. Eisner, supra, since the dividend of the Baltimore & Ohio shares was not a stock dividend, but a distribution in specie of a portion of the assets of the Union Pacific, and it is "governed for all present purposes by the same rule applicable to the distribution of a like value of money."

In United States v. Phellis, 257 U. S. 156, 42 S. Ct. 63, 66 L. Ed. 180, the New Jersey Dupont Company decided to reorganize in Delaware. Its funded debt and capital stock were in excess of $60,000,000. The new corporation was to have a capital of $240,000,000. The assets and good will of the old were transferred to the new at $120,000,000; the shareholders of the old received two shares of common stock of the new company in exchange for one share of the old. The officers of the two corporations were the same. The dividend in stock was held to be taxable. By this exchange, the court said, "the parties were acting in the exercise of their rights for the very purpose of placing the common stockholders individually in possession of new and substantial property rights in esse, in realization of their former contingent right to participate eventually in the accumulated surplus. * * * Its distribution transferred to the several stockholders new individual property rights, which they severally were entitled to retain and enjoy, or to sell and transfer, with precisely the same substantial benefit to each as if the old company had acquired the stock by purchase from strangers."

In Rockefeller v. United States, 257 U. S. 176, 42 S. Ct. 68, 66 L. Ed. 186, the Prairie Oil Company of Kansas organized a pipe line company to take over its pipe line property. The new company turned over all its stock to the oil company, and the stock was distributed to the stockholders of the Prairie Company; the Ohio Oil Company did likewise. The plaintiff brought separate suits to recover the taxes imposed upon the transfer to them of the shares of the pipe line company. In affirming a judgment of the Court of Claims, upholding a tax on the income, the court held that the new stock represented assets of the oil companies which

were formerly their pipe line properties, part of their surplus assets. The distribution of the stock constituted, in the case of each individual, a gain in the form of exchangeable assets for his separate use in place of his former contingent interest in the corporate surplus. This was an increase in wealth, for the gain in value in the form of new pipe line stock caused a diminution in value of the oil stock.

In Cullinan v. Walker, 262 U. S. 134, 43 S. Ct. 495, 67 L. Ed. 906, the plaintiff in 1915 owned $26,645 capital stock of the Farmers' Petroleum Company, for which he paid cash. Acting as one of the trustees in liquidation, he turned over the assets of the Farmers' Company to two new corporations —one a pipe line company, and the other a producing company. Half the assets went to each company, and from each the trustees received all the stock and bonds issued—in each $1,500,000 in stock and $1,500,000 in bonds. Then a third corporation was formed in Delaware, and the trustees turned over the stock of the Texas Company, receiving in turn $3,000,000 of the stock of the Delaware company. The trustees distributed $6,000,-000 in stock pro rata according to the stockholders of the Farmers' Petroleum Company, and the plaintiff's share was worth $1,598,-400. The collector assessed the tax on the gain over the original investment. In affirming the judgment sustaining the tax, the court held that the stock received was not a stock dividend; that the plaintiff's gain was the result of a dividend in liquidation, not essentially different from the ordinary dividend. If the assets had been disposed of for cash, there would be no doubt that the subsequent distribution would be of profits. The distribution being of stock of a company to which the assets had been transferred, the case was controlled by the Rockefeller and Phellis Cases, supra. The Delaware corporation, as a holding corporation, differed from the old company, which was a pipe line and producing company. It differed also in that it was organized under the laws of another state. The gain was not an incident of a reorganization, and the plaintiff's gain was held to have been realized in 1916 and must be taxed as income of that year.

In Marr v. United States, 268 U. S. 536, 45 S. Ct. 575, 69 L. Ed. 1079, the plaintiff owned preferred and common stock of the General Motors Company. He paid for this in cash in 1913, the par value amounting to $76,400. In 1916, the General Motors of Delaware was formed, and in the transfer he received stock of the new corporation valued at $400,866.57. The government imposed a tax on the difference—$324,466.57. In a suit to recover the tax paid, the court affirmed the judgment for the defendant, pointing out that the New Jersey company had outstanding $15,000,000 of 7 per cent. preferred stock, of the par value of $100 per share, and $15,000,000 of common stock, of the par value of $100. The new company had an authorized capital stock of $20,000,000 of 6 per cent. nonvoting preferred and $82,600,-000 in common stock, all being $100 par value. The old company had a large surplus, and, on each share of preferred, 1⅓ shares of preferred stock of the new corporation was given, and for each share of common 5 shares of common stock of the new company. The new company took over the business and assets of the old company, which was dissolved. All the new securities issued in excess of the capitalization of the old company represented income earned by it, and when distributed the gain was taxable. The gain was represented by securities with essentially different characteristics and in an essentially different corporation, and it was held to be income, under the authority of the Phellis, Rockefeller, and Cullinan Cases.

■ Thus, where a stockholder receives a distribution of the assets of a corporation in cash or in stock of a different enterprise, such distribution is for taxing purposes a dividend. No sound distinction can be drawn between a distribution of stock of another corporation and one of valuable rights to purchase such stock. Each may be sold at its selling price. The rights this petitioner sold netted $18 per right. They amounted to a distribution of assets of the company of which it was a stockholder, just as much as an actual distribution of stock of the Baltimore & Ohio Railroad by the Union Pacific Company did in the Peabody Case. There was a distribution in specie of a portion of the assets of the Southern Pacific Company. A distribution of earnings or assets of a corporation is a distribution, whether or not so determined.

In Miles v. Safe Deposit Co., 259 U. S. 247, 42 S. Ct. 483, 66 L. Ed. 923, relied upon by the petitioner, the guardian of an infant held for the infant certain shares of the Hartford Fire Insurance Company. This company had outstanding 20,000 shares, of the par value of $100. It was decided to issue 20,000 additional shares, with the privilege to stockholders to take the new shares in proportion to their holdings in the company at $180 a share. The rights there involved were similar to the rights here con-

sidered. They were not dividend rights, but the rights there involved were to purchase stock in the company granting the rights; whereas, in the case at bar, the rights were to purchase stock in another company. This distinction is made clear in the Peabody, Phellis, and Marr Cases, to which we have referred. The Commissioner, in determining the deficiency, predicated it upon a determination that the value of the rights did not draw from the capital of the Southern Pacific Company, but from its surplus. Wickwire v. Reinecke, 275 U. S. 101, 48 S. Ct. 43, 72 L. Ed. 184. The board properly held that the income received, as a result of the sale of the rights in question, constituted taxable income.

Affirmed.