ST. LOUIS UNION TRUST COMPANY, A CORPORATION, RICHARD McCULLOCH AND LAWRENCE A. OLWELL, CO-TRUSTEES OF THE TESTAMENTARY TRUSTS CREATED BY THE WILL OF JOHN I. BEGGS, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 65675. Promulgated April 13, 1934.

*Henry J. Richardson, Esq.*, and *C. P. Fordyce, Esq.*, for the petitioners.

*Mason B. Leming, Esq.*, and *Paul E. Waring, Esq.*, for the respondent.

374

OPINION.

SMITH: The first question presented by this proceeding is the cost basis to be used in determining the amount of profit realized by the petitioners from the sale in 1929 of 60,263 shares of North American Co. common stock for $6,561,914.62. The petitioners contend that the correct basis is the fair market value of the shares at the time received by them as trustees and that such fair market value is the sum of the products obtained by multiplying the number of shares received from the executors on certain dates by the closing quoted selling price of the shares on the New York Stock Exchange on such dates, which amount the petitioners compute as $6,258,999.50.

The respondent, on the other hand, contends (1) that the petitioners received the securities by specific bequest from John I. Beggs and that the correct cost basis is the value of the securities at the date of the death of the decedent; that for the purpose of determining the estate tax liability the value was fixed at $58 per share and that the correct basis was 60,263 times $58, or $3,495,254; (2) that if his first contention is not sustained, then the correct basis is the fair market value of the shares on June 2, 1928, the date upon which the Beggs Investment Co. was dissolved and its assets distributed to the executors—the same persons who later received the assets of the estate as trustees and are the petitioners herein. It is contended that the quoted selling price of the stock on June 2, 1928, was $75.125 per share; that this price should be reduced $10 per share, or to $65.125, to arrive at the fair market value of the large number of shares received on the liquidation; and that the correct basis on such computation is $4,104,627.87; (3) that if neither of the above contentions is sustained, then the correct basis is the fair market value of the shares on January 2, 1929, the date of the first distribution by the executors to themselves as trustees; and (4) finally it is contended that in any event the petitioners are estopped from contending that the fair market value of the shares at the date actually received by them as trustees was any greater than the quoted prices at the dates of distribution reduced by 14.7 percent, the amount of the reduction of the cost basis used in the deficiency notice. The predicate for this last contention is that the estate tax liability of the estate of John I. Beggs was settled upon the basis that the fair market value of a large block of common stock was subject to a reduction of approximately 14.7 percent from the quoted price. The further argument is made that there was a like reduction from

the quoted prices in determining the profit of the estate from the liquidation of the Beggs Investment Co. in the determination of the income tax liability of the estate for 1928.

The applicable provision of the Revenue Act of 1928 is section 113 (a), which, so far as material, provides as follows:

SEC. 113. BASIS FOR DETERMINING GAIN OR LOSS.

(a) *Property acquired after February 28, 1913.*—The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that—

\*      \*      \*      \*      \*      \*      \*

(5) PROPERTY TRANSMITTED AT DEATH.—If personal property was acquired by specific bequest, \* \* \* the basis shall be the fair market value of the property at the time of the death of the decedent. \* \* \* In all other cases if the property was acquired either by will or by intestacy, the basis shall be the fair market value of the property at the time of the distribution to the taxpayer. \* \* \*

The above provision of the Revenue Act of 1928 effected a change in the basis to be used for the computation of gain or loss upon the sale of personal property acquired by general bequest. *Brewster* v. *Gage*, 280 U.S. 327. In the Revenue Acts of 1926, 1924, and 1921 the basis was "the fair market price or value of such property at the time of such acquisition." We are concerned in this proceeding with the fair market value of certain shares of North American Co. common stock at the time distributed to the petitioners in 1929.

It is the first contention of the respondent that the petitioners received the shares of stock of the North American Co. by specific bequest and that therefore the basis to be used in determining the profit from the sale in 1928 is the fair market value of those shares on October 17, 1925, the date of the death of the decedent. The respondent submits:

\* \* \* that under Section 14 of the decedent's will there was a specific bequest to the trustees of the capital stock of the Beggs Investment Company. Section 14 of the will is patently a limitation on provisions of Section 2 of the will. Section 14 seems clearly to pass to the trustees the capital stock of the Beggs Investment Company as a specific bequest and authorizes the trustees alone to dissolve that corporation. There seems a lack of ambiguity in Section 14 where the privileges, rights, powers and duties of the trustees in respect of any corporation owned by the decedent at the time of his death such as that of the Beggs Investment Company are clearly set forth. \* \* \* It follows that the trustees became entitled to receive and did receive the proceeds of the liquidation of the Beggs Investment Company at the time of its liquidation June 2, 1928. The basis therefore of the trustees, under this alternative proposal, for determining gain or loss upon subsequent sales of the assets of the Beggs Investment Company, including the shares of stock of the North American Company here in question, was their value at the date of the liquidation of the Beggs Investment Company.

We are of the opinion that this contention of the respondent is not well founded. By paragraph 2 of his will the decedent stated that it was his intent "to clothe my said representatives and their successors, with full power and discretion to act in relation to the management, * * * of my estate in the same manner that I might do, if living." The representatives referred to were the executors as well as the trustees. They were clothed with this authority while acting as executors as well as afterwards when they were acting as trustees. By paragraph 9 of the decedent's will the residue of his estate was bequeathed to his trustees and that included the entire residuary estate. It is true that under paragraph 14 the trustees were given authority to continue or dissolve any corporation that the decedent might have organized. But the mere fact that the trustees were given such authority is not the equivalent of saying that the trustees alone had such authority. The executors clearly had, under paragraph 2 of the will, the authority to dissolve any corporation which the decedent might have organized and of which he owned at least beneficially all of the stock. They exercised such authority and there is no reason to assume that they exercised it arbitrarily or illegally. There is always a presumption that acts done by executors and approved by a probate court are legal. In the absence of any evidence whatever that the action of the executors in dissolving the Beggs Investment Co. was illegal, the Board must assume that their actions were legal.

In our opinion the petitioners, the trustees of the estate of Beggs, did not receive the shares of North American Co. stock here in question by a specific bequest. In *Kenaday* v. *Sinnott*, 179 U.S. 606, the Supreme Court of the United States quoted with approval the following definition of the term "general legacy":

Williams says in reference to the different kinds of legacies that: "A legacy is general when it is so given as not to amount to a bequest of a particular thing or money of the testator, distinguished from all others of the same kind. A legacy is specific when it is a bequest of a specified part of the testator's personal estate, which is so distinguished. * * *" * * * And he adds: "The courts in general are averse from construing legacies to be specific; and the intention of the testator, with reference to the thing bequeathed, must be clear."

The second contention of the respondent is that, inasmuch as the trustees and the executors were one and the same persons, the shares of North American Co. common stock were distributed to the petitioners at the time of the liquidation of the Beggs Investment Co., which is shown by the record to have been June 2, 1928. We likewise think that there is no merit in this contention. Manifestly, while the assets of the estate were in the hands of the executors they were owned by the estate and were subject to the liabilities of

the estate. When certain assets were legally transferred to the trustees they were freed from the liabilities of the estate, and any profits realized from their sale became profits of the trust and not profits of the estate. The estate in process of settlement was a separate taxable entity from the trust or trusts set up by the will of Beggs. Cf. *Anderson* v. *Wilson*, 289 U.S. 20.

In I.T. 2441, Cumulative Bulletin VII–2, p. 65, it was held that where a corporate trustee takes a residuary bequest under a will the basic date for valuing the stock received by it is the date of distribution to it as trustee, and not the date of the testator's death. In General Counsel Memorandum 6195, Cumulative Bulletin VIII–1, p. 99, it is said that where under a general bequest a bank as executor distributes shares of stock to itself as trustee the basis to be used for determining gain or loss in the event of a sale thereof by the trustee is the fair market value of the stock at the time of its distribution by the executors. To the same effect is I.T. 2539, Cumulative Bulletin IX–1, p. 139. These legal principles are well established. This contention of the respondent is not sustained.

The third contention of the respondent is that the correct basis is the fair market value of the shares on January 2, 1929, when the executors made the first distribution of shares of stock to the petitioners as trustees. This claim is based upon the assumption that the executors deliberately withheld the distribution to the trustees of the bulk of the assets of the estate and awaited a rise in the market for the shares in order that they might be turned over to the trustees and then sold by the trustees at a price which would minimize the income tax payable by the trustees from the profits on the sale. The evidence shows that no such assumption is proper. The estate was under a heavy estate tax liability and under other liabilities as well. We can not assume without evidence that the executors knew that there would be a rise in the price of the shares after January 2, 1929, which would work to the detriment of the Government revenues on the sale of a portion of the shares by the trustees. So far as anything is shown to the contrary, the executors might just as reasonably have expected a decline in the price of the shares. Furthermore, there is no evidence that the then executors, who afterwards became the trustees and the petitioners herein, at the time the distributions were made contemplated the sale at a future time of any of the shares.

The final contention of the respondent upon this point is that the petitioners are estopped to deny that the fair market value of the shares at the time received by them from the executors should be reduced to the extent of 14.7 percent by reason of the fact that

a corresponding reduction was made in the computation of the value of the shares of the Beggs Investment Co. in the estate tax return. The stipulated facts show that the quoted price for North American Co. common stock at the date of the death of Beggs was $68.625 per share. In the settlement of the estate tax liability the shares were valued at $58 per share, equaling a percentage reduction of 15.48. It appears, however, from the revenue agent's report upon an investigation of the income tax liability of the estate for 1928, that the percentage 14.7 was obtained in the following manner: The revenue agent states: "In other words, the market quotation at the time of the death of Mr. Beggs, the market was $68 per share and in the final settlement it was allowed at $58 per share." This reduction of $10 per share equals 14.7 percent of the assumed market quotation of $68. The argument of the respondent is, therefore, that, inasmuch as the estate was given the benefit of a reduction of $10 per share in the determination of the estate tax liability and likewise a reduction of a corresponding amount in the determination of the income tax liability of the estate for 1928 and was thereby saved total tax liabilities in excess of $500,000, the petitioners are estopped to deny that a corresponding reduction should be made from the market quotations for the purpose of arriving at the base in the determination of the profit upon the sale by the petitioners in 1929 of 60,263 shares of North American Co. common stock. In making this contention the respondent does not contend that the fair market value of the shares at the several dates of distribution as determined by the quoted prices of the stock was not $6,258,999.50. The only contention is that the petitioners are estopped to deny that that base should be reduced by 14.7 percent.

The facts in the proceeding at bar are substantially different from those which obtained in *Stearns* v. *United States*, 291 U.S. 54. In this proceeding we are concerned with the fair market value of the shares at the time they were distributed to the petitioners in 1929 and not with their fair market value at the date of the death of the decedent on October 17, 1925, or with the fair market value of the shares on June 2, 1928, the date of the dissolution of the Beggs Investment Co. Not only are the basic dates different, but also the number of shares is different, the quoted prices are different, and, what is more to the point, we are here dealing with a different taxable entity from that involved in the prior proceedings. For these reasons we think that the doctrine of estoppel has no application to the proceeding.

We do not know what representations were made to the respondent which led him to accept a value of $58 per share for North American Co. common stock on October 17, 1925, when the market value for

those shares was $68.625. Neither do we know what considerations led him to reduce the market value of the shares $10 per share in the determination of the profit realized by the estate from the liquidation of the Beggs Investment Co. in 1928.

The only evidence in the record as to the fair market value of the shares of the North American Co. common stock on the dates that the petitioners received those shares from the executors is the closing prices of the shares on the New York Stock Exchange at the several dates of distribution. We can not assume without proof that the fair market value for a large block of the stock was different from the fair market value of a small block. In *Frank J. Kier et al., Executors*, 28 B.T.A. 633, we sustained the respondent's determination of fair market value of corporate stock based upon sales of scattered shares, where facts concerning financial conditions and business prospects of the corporation and record of stock sales on the exchange indicated that the stock owned by decedent's estate could have been marketed within a reasonable time at prices at least equal thereto. In *T. W. Henritze*, 28 B.T.A. 1173, we held that evidence of the prices of shares of stock in active trading on the New York Curb market at the time when the shares were received by the taxpayer was more probative of the fair market value of such shares than evidence of book value or past earnings of each of the corporations involved in a reorganization.

Even though the fair market value of large blocks of North American common stock on October 17, 1925, the date of decedent's death, and on June 2, 1928, the date of the dissolution of the Beggs Investment Co., may have been less than the quoted prices for those shares, we can not assume that a like reduction from the quoted prices should be made for the shares received by the trustees from the executors in 1929 in arriving at the fair market value. The evidence of record indicates that the prices of the shares rose very rapidly in 1929, and, in the absence of evidence to the contrary, we must assume that the quoted market prices reflected the fair market value. We sustain the petitioners' contention that the fair market value was $6,258,999.50.

The second question for consideration is whether the petitioners are entitled to deduct a loss of $1,173,206.27 or some such amount because of the sale or worthlessness in 1929 of 209,674 warrants evidencing the right to subscribe to new common stock of the North American Co. In article 58 of Regulations 74 it is stated:

Where a corporation issues to its shareholders rights to subscribe to its stock, the value of the rights does not constitute taxable income to the shareholder, although gain may be derived or loss sustained by the shareholder from the sale of such rights. In this connection the following rules may be stated:

382

(1) If the shareholder does not exercise, but sells his rights to subscribe, the cost or other basis of the stock in respect of which the rights are issued shall be apportioned between the rights and the stock in proportion to the respective values thereof at the time the rights are issued, and the basis for determining gain or loss from the sale of a right on one hand or a share of stock on the other will be the quotient of the cost or other basis assigned to the rights or the stock, divided, as the case may be, by the number of rights issued or by the number of shares held.

The computation of the petitioners of the claimed loss is as follows:

9/3/29—Trustees acquired 204,560–6/40 shares valued at $183_ $37,434,507.45
10/7/29—Trustees acquired 5,113–36/40 shares valued at $160_ 818,224.00

Total_____ 209,674–1/20 shares
Total cost_____ 38,252,731.45
Rights were issued 10/17/29

Market value 10/17/29

1 share stock_____ $140.25
1 right_____ 4.4375

Therefore 3.067% of the original cost should represent the allocated cost of 209,674 rights
38,252,731.44 x 3.067% or_____ $1,173,211.27
Sold 209,674 rights for_____ 5.00

Loss _____ $1,173,206.27

We are of opinion that the computation made by the petitioners is not justified either by the Commissioner's regulations or by the facts in this case. The facts are that on and after October 7, 1929, the petitioners were the owners of 209,674–2/40 shares of the common stock of the North American Co. Later in October they received 209,674 rights entitling them to purchase 20,967–4/10 additional shares of common stock of that company at $100 per share, the rights expiring by limitation on November 15, 1929. They did not exercise the rights and they became worthless in their hands.

The petitioners paid nothing for the rights. Only a very small fraction of one percent of the total rights issued was ever exercised, and at the time those rights were exercised the market value of the stock was less than the subscription price. The petitioners held substantially the same interest in the corporation after the rights expired which they held before. It is impossible therefore to find any valid basis for a claim of loss.

For some reason which is not apparent from the record the petitioners paid a commission of $50 plus $419.36 for internal revenue stamps in effecting a sale of the rights for a consideration of $5 on November 14, 1929. Clearly this was not a transaction which was

entered into for profit, nor was it a normal business transaction. We think that the petitioners sustained no deductible loss from such transaction. The amount paid for revenue stamps constitutes a legal deduction from gross income as taxes paid. The determination of the Commissioner that the petitioners sustained no deductible loss from the sale of the rights is sustained. Cf. *Sidney Z. Mitchell*, 18 B.T.A. 994; affd., *Mitchell* v. *Commissioner*, 48 Fed. (2d) 697; certiorari denied, 284 U.S. 646.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*