EASTERN SHARES CORPORATION (FORMERLY PASSWALL CORPORATION), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 69219. Promulgated May 14, 1935.

*A. C. Newlin, Esq.*, for the petitioner.

*Nathan Gammon, Esq.*, and *Vernon F. Weekly, Esq.*, for the respondent.

### OPINION.

BLACK: In this proceeding respondent has determined a deficiency of $4,303.46 for the year 1929.

Petitioner assigns one error, as follows:

(a) Respondent has erroneously disallowed a deduction of $38,622.40, being petitioner's basis for certain rights to subscribe to stock, which rights were neither exercised nor disposed of, and which expired in the taxable year.

The facts were all stipulated and are a part of the record. We relate only such facts here as we deem necessary to a clear understanding of the issue involved in this proceeding.

Petitioner, a corporation organized under the laws of the State of Delaware, was originally named Passwall Corporation. The name was later changed to Eastern Shares Corporation.

On October 8, 1929, petitioner owned 5,000 shares of class B common stock of the American Cyanamid Co., a Maine corporation, which had cost $241,390. On that date the outstanding stock of the American Cyanamid Co. consisted of 65,943 shares of no par class A common and 1,550,776 shares no par class B common. The B stock had no voting power; otherwise there was no difference between the two classes of stock.

On September 30, 1929, the board of directors of the American Cyanamid Co. adopted a plan of offering additional of its authorized

but unissued class B common stock to its class A and class B stockholders at the rate of one new share for each two old shares held, and at a subscription price of $30 per share, such right to accrue to stockholders of record October 8, 1929, and to expire at 3 p. m., November 4, 1929. The stockholders were advised of the plan on or about September 30, 1929. The offer of new stock was underwritten by bankers who agreed to take, at a price of $30 per share, any of such B stock as to which the right to subscribe was not exercised by stockholders.

Warrants evidencing the right to subscribe were mailed to stockholders on October 8, 1929. Petitioner duly received on account of its 5,000 shares of old stock warrants entitling it to subscribe to 2,500 additional shares of class B stock.

Throughout 1929 American Cyanamid Co. class B stock was listed on the New York Curb Exchange and the rights were also traded in on that exchange. In paragraph 9 of the stipulation of facts there is set forth a table showing the dealings during the period September 30 to November 4. As indicated, there was an active market in both the stock and the rights. On the record date, October 8, the stock was selling at about 50 and the rights at about 9. From then on the market value of the stock declined until on November 4, when the rights expired, it was selling at slightly above the subscription price of 30. The selling price of the rights declined accordingly, although trading in rights was active every day the exchange was open, except November 4.

Because of the decline in the market price of the stock the possibility of extending the subscription period was considered, but decided against, since it would have rendered necessary modification of the underwriting contracts. Later the stock rose to 37.

Stockholders holding stock entitling them to subscribe to 683,212 shares of new class B common duly exercised their rights. Stockholders holding stock entitling them to subscribe to 125,147 shares did not exercise their rights, and the stock with respect to which such rights were issued was duly subscribed and paid for by the underwriters at $30 per share.

Petitioner did not exercise its rights and did not sell or otherwise dispose of them, and they expired at 3 p. m., November 4, 1929.

In its Federal income tax return for 1929 petitioner took as a deduction a loss of $38,622.40 on account of its rights, and did not report any income from the receipt of stock rights. This loss was computed by taking that proportion of its cost of the 5,000 shares of class B stock of the American Cyanamid Co. which the value of the rights on October 8, 1929, the record date, bore to the

value of stock plus rights on that date. Respondent disallowed the deduction.

During 1929 petitioner did not sell any of the stock with respect to which it received the rights.

Petitioner duly filed its Federal income tax return for 1929 with the collector of internal revenue for the second district of New York. Petitioner kept its books and prepared its income tax return on the cash receipts and disbursements basis.

In *Bradley W. Palmer*, 32 B. T. A. 550, the taxpayer, by virtue of his ownership of shares of stock of the American Super-power Corporation, received purchase certificates entitling him to purchase shares of stock in the United Corporation and the Commonwealth Southern at what the Commissioner determined to be bargain prices. On the facts of that case the Board held that a taxpayer was not in receipt of income because stock purchase rights, having a market value at the time of issuance, were issued to him. To the same effect is *Ramapo, Inc.*, 32 B. T. A. 561. See also *T. I. Hare Powel*, 27 B. T. A. 55; *Edward S. Harkness*, 31 B. T. A. 1100.

It has been held that where stock rights are sold, the gain is recognized, and in computing the gain the taxpayer is given the option to report the entire sale price of the rights as gain and therefore not diminish his basis of the stock upon which such rights are issued, or he can allocate the cost of the original stock between such stock and the rights received and compute his gain on the stock rights sold in that manner. See Regulations 74, article 58, Revenue Act of 1928.

The petitioner in the instant case did not sell the stock rights issued to it to purchase class B stock of the American Cyanamid Co. It allowed them to lapse and thereby become completely worthless. Did it have a deductible loss? Section 23 (f) of the Revenue Act of 1928 reads as follows:

In computing net income there shall be allowed as deductions:

\*          \*          \*          \*          \*          \*          \*.

(f) *Losses by corporations.*—In the case of a corporation, losses sustained during the taxable year and not compensated for by insurance or otherwise.

It is petitioner's contention, as we understand it, that the receipt of stock rights is in the nature of the receipt of income, but that the gain thereby is not to be recognized for income tax purposes because of the following provisions of the Revenue Act of 1928:

SEC. 113 (a) (9). TAX-FREE DISTRIBUTIONS.—If the property consists of stock or securities distributed after December 31, 1923, to a taxpayer in connection with a transaction described in section 112 (g), the basis in the case of the stock in respect of which the distribution was made shall be apportioned, under rules and regulations prescribed by the Commissioner with the approval of the Secretary, between such stock and the stock or securities distributed.

SEC. 112 (g). *Distribution of stock on reorganization.*—If there is distributed in pursuance of a plan of reorganization, to a shareholder in a corporation a party to the reorganization, stock or securities in such corporation or in another corporation a party to the reorganization, without the surrender by such shareholder of stock or securities in such a corporation, no gain to the distributee from the receipt of such stock or securities shall be recognized.

If petitioner's premise that receipt of stock rights is in the nature of income could be accepted as true, then the above quoted sections of the statute relating to tax-free distributions would probably be applicable. But petitioner is not relieved from reporting stock rights as income because of the above quoted sections of the statute, but he is relieved from reporting such a transaction as income because the receipt of stock rights is not income, taxable or otherwise.

In *Miles* v. *Safe Deposit & Trust Co. of Baltimore*, 259 U. S. 247, the Supreme Court held that the distribution to its stockholders by a corporation of rights entitling them to subscribe for new shares of its own stock " in and of itself constituted no division of any part of the accumulated profits or surplus of the company, or even of its capital ", and that the privilege to subscribe to the new stock " of itself was not a fruit of stock ownership in the nature of a profit; nor was it a division of any part of the assets of the company."

Article 58 of Regulations 74 contains, among other things, this provision:

Where a corporation issues to its stockholders rights to subscribe to its stock, the value of the rights does not constitute taxable income to the shareholder, although gain may be derived or loss sustained by the shareholder from the sale of such rights.

In *Bradley W. Palmer, supra*, the Commissioner contended that the purchase rights there distributed to a stockholder were taxable income because they were rights to purchase stock of an entirely different corporation from the one issuing such rights to purchase. However the Board held that even in that kind of a case, the receipt of a mere right to make an advantageous purchase was not income, unless it was an artifice used for the purpose of disguising a taxable dividend. If the receipt of rights to purchase stock in an entirely different corporation from the one issuing such purchase rights is not income, then *a fortiori* the issuance by a corporation to a stockholder of rights to subscribe to its own stock is not income.

It is difficult to see upon what ground petitioner would be entitled to the loss which it claims by reason of the expiration of the rights if the rights themselves are not income or the distribution of capital. Petitioner has no cost basis for these rights upon which to predicate a deductible loss, such as was present in *Sidney Z. Mitchell*, 18 B. T. A. 994; affd., 48 Fed. (2d) 697. Neither the applicable statutes nor the Commissioner's regulations authorize petitioner to allo-

cate part of the cost of his original shares of stock to the stock rights received, except in cases where such rights are either exercised or sold.

The Board has already decided the point here involved and held that where a stockholder has received rights to purchase shares of stock in the issuing corporation and those rights become worthless in his hands, the stockholder does not have a legal claim of loss of the value of the rights. *St. Louis Union Trust Co. et al., Co-trustees*, 30 B. T. A. 370.

Petitioner in its brief draws a distinction in the facts of the *St. Louis Union Trust Co.* case and the instant case. Petitioner says that in the *St. Louis Union Trust Co.* case, because of the fall in the market price of the stock after the issuance of the rights, the corporation undertook to rescind the arrangement, refunded subscriptions received, and issued only 1,542 new shares out of a total of 560,322.4 shares for which rights were distributed. "Consequently [says petitioner] the taxpayer held substantially the same interest in the corporation after the rights expired which he held before and the basis for the rights was reflected in the stock retained. In other words, the situation was comparable to where stockholders contribute stock, pro rata, to the corporation." Petitioner further says in his brief:

* * * In the instant case all of the rights were exercised, 84½% by stockholders and 15½% by underwriters.

Issued stock was increased from 1,616,719 shares to 2,425,078 shares, and the proportionate interest of the taxpayers was materially changed. Unlike the Beggs case, whatever was the allowable basis to this taxpayer was not reflected in the stock which it retained. The privilege represented by the warrants was irrevocably lost to this taxpayer and, in fact, was exercised by another. Whatever was the cost of that privilege was therefore a deductible loss.

For reasons we have already stated, we can not agree to this contention. It often happens that a corporation is recapitalized by increasing its capital stock and the new stockholders are outsiders and manifestly the old stockholders do not then own the same proportionate interest in the corporation as they did before the recapitalization. But can it be said that they have realized a taxable gain if the value of their stock is increased by the recapitalization or that they have suffered a deductible loss if the value of their stock is decreased by the recapitalization? Manifestly not. Taxable gains do not arise from the mere appreciation of shares of stock and deductible losses do not result from their mere depreciation. Gains or losses arise when the stock is finally disposed of. The income tax law is concerned only with realized gains and realized losses. This proposition is so well supported by authorities that it is unnecessary to cite any cases.

In the instant case when petitioner allowed its stock rights to expire without exercising them, it still owned all of its shares of stock upon which such rights were issued and the cost basis of that stock remained just the same as it was before the stock rights were issued. It will have gain or loss on this stock when it finally disposes of it.

On the authority of *St. Louis Union Trust Co. et al., Co-trustees, supra*, we hold that petitioner suffered no deductible loss when it allowed the stock rights in question to lapse without their being exercised.

*Decision will be entered under Rule 50.*