**RAMAPO, Inc., v. COMMISSIONER OF INTERNAL REVENUE.**

**No. 298.**

Circuit Court of Appeals, Second Circuit.

July 6, 1936.

of each group of rights on the respective dates on which the certificates therefor were actually received, namely, February 1, May 13, and June 24, 1929. The Commissioner likewise treated the value of the rights as dividends, but determined the value as of the dates fixed by the respective resolutions for ascertaining the stockholders of record entitled to receive them; namely, January 26, May 8, and June 18. By amended answer, however, the Commissioner moved to increase the deficiency determined by him, if he had made any errors in favor of the taxpayer. The Board of Tax Appeals ruled that the rights were not dividend distributions at all, but merely represented offers by Superpower to sell certain of its assets to its stockholders pro rata. Hence it held that the rights cost the taxpayer nothing and the entire amount received from the sale of rights constituted taxable income; and that the basis for computing the gain on the sale of shares of stock acquired by exercise of the rights was the amount paid for such shares. This produced the deficiency complained of.

D. A. Embury, of New York City (Curtis, Mallet-Prevost, Colt & Mosle, and George A. Reiss, all of New York City, of counsel), for petitioner.

Robert H. Jackson, Asst. Atty. Gen. (Sewall Key and Francis I. Howley, Sp. Assts. to the Atty. Gen.), for respondent.

Robert G. Dodge and Francis V. Barstow, both of Boston, Mass., amici curiæ.

Before MANTON, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

The taxpayer is a corporation which keeps its books and makes its income tax returns on a cash receipts and disbursements basis. During the year 1929 it was a stockholder of the American Superpower Corporation (hereafter for brevity referred to as "Superpower"). By resolutions adopted in January, May, and June, 1929, Superpower gave its stockholders rights to purchase from it at stated prices shares of common stock of the United Corporation and the Commonwealth & Southern Corporation. Some of the rights so received by the taxpayer it exercised; others it sold. It also sold some of the shares acquired by the exercise of these rights. This appeal raises questions as to how the rights shall be treated for income tax purposes. The taxpayer considered them dividend distributions by Superpower under section 115 (a) of the Revenue Act of 1928, 26 U.S.C.A. § 115 and note, and returned as dividends the fair market value

There is a plain distinction between the distribution by a corporation of its own stock and of stock owned by it in another corporation. The former does not diminish the corporation's assets, and is not taxable income to its shareholders, Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570; the latter does, and, if it represents earnings or surplus, is taxable as a dividend. Peabody v. Eisner, 247 U.S. 347, 38 S.Ct. 546, 62 L.Ed. 1152. See, also, Rockefeller v. United States, 257 U.S. 176, 42 S.Ct. 68, 66 L.Ed. 186; Marr v. United States, 268 U.S. 536, 45 S.Ct. 575, 69 L.Ed. 1079; Koshland v. Helvering, 298 U.S. ——, 56 S.Ct. 767, 80 L.Ed. ——. The same distinction obtains when a corporation issues rights to purchase stock at less than its real value. If the stock is that of the issuing corporation, the rights are analogous to a stock dividend, and no taxable income is realized until the shareholder disposes of his rights or of the stock acquired by the exercise of them. Miles v. Safe Deposit & Trust Co., 259 U.S. 247, 42 S. Ct. 483, 66 L.Ed. 923. But, if the rights are to purchase stock in another corporation at less than its fair market value, the issuance of them is a distribution of corporate assets in the amount by which value of the stock exceeds the price to be paid for it, and, if such excess represents earnings or surplus, is a dividend. This

would appear to be self-evident. As this court stated in Metcalf's Estate v. Commissioner, 32 F.(2d) 192, 194: "No sound distinction can be drawn between a distribution of stock of another corporation and one of valuable rights to purchase such stock." To the same effect is Duke v. Commissioner, 18 B.T.A. 374. See, also, Appeal of Bradley, 1 B.T.A. 111, 117; Venner v. Southern Pac. Co., 279 F. 832, 840 (C.C.A. 2). If Helvering v. Bartlett, 71 F.(2d) 598 (C.C.A. 4), be deemed to hold the contrary, we cannot follow it. Of course, if full value is paid for the stock, no dividend is received by the shareholder. The controlling issue, therefore, in passing upon the correctness of the Board's decision, is whether the shareholders of Superpower were given rights to purchase the stock of the United Corporation and the Commonwealth & Southern Corporation at less than its fair market value; for, if they were, to the extent that the value of the stock exceeded the price payable, they received a distribution of property which was a dividend, if made out of corporate earnings or profits accumulated after February 28, 1913. Section 115 (a), Revenue Act of 1928 (45 Stat. 822 [26 U.S.C.A. § 115 and note]).

The case was tried upon stipulated facts which were adopted by the Board as its findings of fact. The stipulation shows that each group of rights had an active market and substantial value. Over 200,000 of the January rights were traded in at prices ranging from 11⅝ to 21 per right, which was the equivalent of $23 to $42 per share of United stock. More than 1,000-000 of the May rights changed hands at prices between 11⅜ and 6⅛, and an even larger number of the June rights, relating to Commonwealth stock, was dealt in. The quotations for the respective stocks during the periods in question were also stipulated and showed a market price much above the price at which holders of rights were privileged to buy. These stipulated quotations conclusively establish in our opinion that the stock distributed by Superpower had a fair market value largely in excess of the prices at which it was "sold" to the shareholders. The respondent asserts, however, that the Board made a contrary finding with respect to United stock subject to the January rights, and that this finding is supported by substantial evidence. The finding in question appears as a statement in the opinion in Palmer v. Commissioner, 32 B.T.A. 550, which was tried and decided with the case at bar. The evidence relied upon is the fact that early in January, 1929, when the United Corporation was formed, the promoters allotted several million shares among themselves at an agreed price of slightly less than $25 per share. What the promoters agreed upon at that time cannot, in our opinion, justify disregarding actual market quotations of numerous transactions at the critical date several weeks later. A finding that the rights had no value cannot be sustained in the face of the additional findings as to market quotations of rights and stock. Indeed, the Board itself in a subsequent decision recognized the Ramapo and Palmer cases as holding that the taxpayer received no income despite the fact that the rights had a market value. Eastern Shares Corporation v. Commissioner, 32 B.T.A. 608, 610.

The respondent also argues that no dividend was distributed because Superpower did not have sufficient earnings or surplus to permit it. This contention is based chiefly on the bookkeeping of Superpower. The United stock was acquired in exchange for other securities which were carried at cost, although in the exchange a greatly increased value was placed upon them. This appreciation of about $46,000,000 was not, however, entered upon the books as profit, and the original cost item was carried along as the cost of United stock. It gave a basis of $8.94 per share, but, in computing the value of the rights distributed in order to prove that earnings were insufficient to pay such a dividend, the value of the stock was taken as some $50 or $60 per share. Any consistent analysis of the figures will demonstrate beyond question that the earnings and profits were sufficient to permit distribution of the value of the rights without impairing capital. Such distribution was therefore a dividend.

The remaining question relates to the date as of which the rights shall be valued. Cash dividends are not income to a shareholder until absolutely at his disposal. Avery v. Commissioner, 292 U.S. 210, 54 S. Ct. 674, 78 L.Ed. 1216. No reason is apparent for distinguishing between cash and property dividends as to the time when they become income. The date when the respective rights became available to the shareholders was when the certificates or warrants were received, and that is the date as of which they should be valued. See 74 Treas.Reg. art. 627.

Order reversed.